**HOME INSURANCE COMPANY**

v.

**Norman PERLBERGER, Esq.; Perlberger & Haft, P.C.; and Perlberger Law Associates,**

**and**

**Diane Strausser.**

Civ. A. No. 95–2029.

United States District Court, E.D. Pennsylvania.

Sept. 26, 1995.

Arthur W. Lefco, Victor M. Verbeke, Sherr, Joffe & Zuckerman, P.C., West Conshohocken, PA, for Home Insurance Company.

Norman Perlberger, Perlberger Law Associates, P.C., Bala Cynwyd, PA, pro se.

John M. Elliott, Mark J. Schwemler, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, James C. Schwartzman, Schwartzman & Associates, Philadelphia, PA, for Diane Strausser.

## *OPINION*

LOUIS H. POLLAK, District Judge.

This action is one by a legal malpractice insurer, The Home Insurance Company ("Home"), a New Hampshire corporation with its principal place of business in New York, seeking a declaratory judgment that, pursuant to the terms of a malpractice policy entered into as of June 22, 1988, it need not indemnify or defend its insureds—Norman Perlberger, Esq.; his present law firm (Perlberger Law Associates); and his previous law firm (Perlberger & Haft, P.C.)—in an action brought against them in the Court of Common Pleas of Montgomery County, Pennsylvania by Diane Strausser, a former client. Strausser brought her lawsuit in March, 1992, and filed an amended complaint in September, 1994. On February 17, 1995, Home advised Perlberger that it would not indemnify him or his law firms for the claims set forth in the amended complaint. Home then, on April 7, 1995, filed the present diversity action against Perlberger, a citizen of Pennsylvania; his past and present law firms, also citizens of Pennsylvania; and against Strausser, a citizen of New Jersey, who has been deemed by Home to be an indispensable party.

I. *Factual Background.*

The allegations in Strausser's amended complaint in the Court of Common Pleas are that Perlberger, a divorce lawyer, had a romantic relationship with Strausser during his representation of her and subsequently influenced her use of the very large settlement that she received from her ex-husband. Strausser argues that Perlberger, either negligently or intentionally, induced her to manage her assets in ways that benefited him and disadvantaged her. For instance, she claims that he induced her to purchase a series of houses that she then had difficulties in selling, and on one of which the mortgage lender foreclosed. She also alleges that Perlberger's law firms benefited from Perlberger's misuse of her assets. Based on these allegations, Strausser makes five broad categories of claims—legal malpractice, breach of contract, breach of fiduciary duty, fraud, and unjust enrichment—against Perlberger, his present law firm, and his previous firm (hereinafter, "Perlberger and his law firms").

Home's complaint in this court grounds its disclaimer of any obligation to indemnify Perlberger on five independent arguments:

(a) *"Prior Acts" exclusion.* A separate endorsement to Home's policy states that losses resulting from claims "arising from any acts, errors, omissions, or personal injuries occurring or alleged to have occurred prior to 6–22–88" are excluded. *See* Prior Acts Exclusion Endorsement, Exhibit B to Home's Complaint. Home asserts, based upon this exclusion, that it need not indemnify Perlberger and his law firms for some or all of Strausser's claims.

(b) *"Professional Services" provision.* Home's policy states that it will only insure against claims made "by reason of any act, error or omission in professional services rendered or that should have been rendered by the insured ... and arising out of the conduct of the insured's profession as a lawyer or notary public." *See* Professional Liability Insurance Policy, Exhibit A to Home's Complaint. Home asserts that Perlberger and his law firms "did not render any professional services to Diane Strausser after June 22, 1988, which are alleged to have caused her any harm."

(c) *"Wrongful Acts" provision.* Home's policy states that it does not apply "to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the insured. However, notwith-

standing the foregoing the Company will provide a defense for any such claims without any liability on the part of the Company to pay such sums as the Insured shall become legally obligated to pay as damages." *Id.* Home asserts that this exclusion bars it from liability for some or all of Strausser's claims.

(d) *"Innocent Party" provision.* Home's policy provides that it will provide coverage, despite the "wrongful acts" exclusion, as to persons "who did not personally commit or personally participate in" the commission of the wrongful act, provided that they comply with the terms of the exclusion after receiving notice of the failure of their co-insured to do so. *Id.* Home asserts that Perlberger's law firms "are not innocent parties, and ... were fully aware of the acts and omissions committed by Defendant Perlberger and personally participated in committing the dishonest, deliberately fraudulent and maliciously [sic] acts." Complaint, ¶ 20.

(e) *Public policy.* Home asserts that, as a matter of law, "it is against public policy to provide insurance coverage for the intentional acts set forth in Strausser's Amended Complaint."

Strausser has moved for judgment on the pleadings, asserting, *inter alia,* that Home's request for a declaratory judgment cannot be granted because the case is not ripe for judicial adjudication. Strausser also counterclaims for legal fees and costs, arguing that Home's action is frivolous and brought for an improper purpose.

The declaratory relief sought by Home can be divided into three categories: (1) a request for a declaratory judgment as to Home's duty to defend Perlberger, (2) a request for a declaratory judgment as to whether public policy and/or the "wrongful acts" and "innocent party" provisions of the malpractice policy free Home of any duty to indemnify Perlberger, and (3) a request for a declaratory judgment as to whether the "prior acts" and "professional services" provisions have the same effect. Each of these three requests fails, although for distinct reasons. The first request cannot succeed on its merits, at least at the present stage of the underlying litigation; the second request is not yet ripe for judicial adjudication; and the third request presents a substantial risk of interference with the pending state court proceedings, and hence constitutes a claim with respect to which this court exercises its discretion not to entertain a declaratory judgment action. Strausser's counterclaim also must fail, because there is no basis for an award of fees or costs under the applicable legal standard.

## II. *Duty to Defend.*

Certain of Home's requested grounds for declaratory relief—its "wrongful acts," "innocent party," and public policy arguments— affect only Home's duty to indemnify Perlberger and his law firms, not Home's duty to defend them. Home's own policy states that Home will defend its insureds against allegations of "wrongful acts" although it will not indemnify him for judgments based on such conduct. *See* Exhibit A to the Home Insurance Company's Complaint for Declaratory Judgment. Home's "innocent party" claim is an exception to the "wrongful acts" exclusion, and so is also not relevant to Home's duty to defend. Finally, as to Home's assertion that insurance for intentional acts is contrary to public policy, the court assumes that Home does not intend for this argument to apply to Home's duty to defend its insureds, only to its duty to indemnify them, the usual context in which such "public policy" arguments are made.

 Thus, this court need only consider whether Home's "prior acts" and "professional services" arguments affect Home's duty to defend Perlberger and his law firms. "Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3rd Cir.1985) (emphasis in original). Moreover, "an insurer is required to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Co,* 766 F.Supp. 324, 329 (E.D.Pa. 1991). Thus, if this court can identify at

least one claim in Strausser's state-court complaint which could potentially come within the coverage of Home's policy—that is, allegations that Perlberger rendered professional services to Strausser after June 22, 1988—then it must find that Home has a duty to defend Perlberger.

There are two, and possibly three, allegations in Strausser's complaint that fall into this category. The state-court complaint alleges: (a) that Perlberger provided legal advice to Strausser in her purchase of a house in Villanova, Pennsylvania, a purchase that was completed on June 30, 1988, *see* Plaintiff's Amended Complaint, Exhibit C to the Home Insurance Company's Complaint for Declaratory Judgment, ¶¶ 84–85; (b) that Perlberger provided legal advice to Strausser in her purchase of a house in Avalon, New Jersey, a purchase that was completed on March 23, 1989, *see id.* at ¶¶ 106–110; and (c) that Perlberger wrote a letter to Strausser in June 1988 stating that his firm "would continue to act as her legal counsel," and that he advised Strausser on transactions (whether occurring before or after June 22, 1988 is unclear) in which Strausser used certain of her assets to subsidize Perlberger's new law firm, which was established at about that time, *see id.* at ¶¶ 93–94.

Thus, it would appear that, at the present stage of the state-court litigation, this court cannot find that Home has no duty to defend Perlberger. The court therefore grants Strausser's motion for judgment on the pleadings as to Home's duty to defend Perlberger.

### III. *Duty to Indemnify.*

### A. *Home's "Wrongful Acts," "Innocent Party," and Public Policy Claims.*

■ Home's "wrongful acts," "innocent party," and public policy claims all amount to requests for declarations that Home need not indemnify Perlberger for judgments based on intentional conduct, and need not indemnify his law firms for judgments based on conduct of which they were aware or in which they participated. At oral argument, Home clarified its position somewhat, agreeing that certain portions of Strausser's com-

plaint appeared to be based upon negligence theories, and that these aspects of the complaint would not be within the "wrongful acts" provision. Home proposed that this court parse Strausser's state-court complaint and identify the claims with respect to which Home would not be obliged to indemnify its insureds. Home also clarified that it did not ask the court to find any facts as to whether Perlberger actually committed "wrongful acts," as any such factfinding could prejudice its insured in the state-court proceeding.

Home's request is not ripe for judicial determination. The controlling Third Circuit case is *Step–Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643 (3d Cir.1990). That case involved a suit by an installer of computer systems against two computer equipment manufacturers. The installer had been sued by some of the firms to which it had provided computer systems, and sought a declaratory judgment that the firms from which it had bought the equipment were liable to it for any damages. The *Step–Saver* court found that a declaratory judgment action was not appropriate in these circumstances, as the case was not ripe. *See id.* at 645–50.

■ The *Step–Saver* court set forth a three-part test for the ripeness of a declaratory judgment action. Under this test, courts must consider (1) the *adversity of the interests* of the parties to the action, (2) whether a declaratory judgment would be *conclusive,* i.e., whether it would "define and clarify the legal rights or relations of the parties," *id.* at 648, and (3) the *utility* of a declaratory judgment. In *Step–Saver,* the court found (1) that the parties' interests were not clearly adverse, as the independent lawsuits at issue could end by establishing a defect for which the *Step–Saver* defendants were not liable, and as the defendants had indeed not even denied that they were liable for the harm at issue; (2) that the court's decision would not be conclusive, as the plaintiff Step–Saver was asking the court to rule on a hypothetical set of facts, inviting later litigation of the question whether the outcomes of the independent lawsuits matched those facts; and (3) that the court's decision would have little utility, as the

"vouching-in" procedure under U.C.C. § 2–607(5)(a) had already established a basis for holding the manufacturers liable in a subsequent proceeding. *See Step–Saver,* 912 F.2d at 647–650.

As to the first *Step–Saver* factor, adversity, the analysis pulls in two different directions. In contrast to *Step–Saver,* Home has denied that it is required to indemnify Perlberger. However, the adversity of the parties' interests as to the duty to indemnify will not be complete until after the resolution of the state-court action, when it will be clear whether Perlberger can assert a claim for indemnity from Home. This court need not, however, decide whether the fact that Home has given notice to Perlberger that it will not indemnify him suffices to render the parties' interests adverse for ripeness purposes, since the "conclusiveness" stage of the ripeness analysis is determinative.[1]

To turn to that analysis, a declaratory judgment would not conclusively resolve the dispute between Home, Perlberger, and Strausser as to the "wrongful acts" and "innocent party" provisions, or as to whether it would be contrary to public policy for Home to indemnify Perlberger. Home seeks to distinguish *Step–Saver* by arguing that Home's complaint does not present the type of contingent liability at issue in that case, as Strausser's state-court complaint provides a sufficient set of completed facts on which to base Home's complaint. In fact, however, Home's request for declaratory judgment seems to be more similar to that in *Step–Saver* than Home acknowledges. Plaintiff Step–Saver had sought a federal court declaration that, if the state-court suits against it found a defect that was attributable to the defendant manufacturers, the latter would be liable. Step–Saver did not, however, ask the federal court to decide whether Step–Saver or the manufacturers of the computer equipment had actually been responsible for the defect. In the view of the Third Circuit, this created the risk that, subsequent to the hypothesized declaratory judgment and the termination of the state-court litigation, yet a third round of litigation would be required to determine whether the state-court decisions were within the scope of the declaratory judgment. (Such a situation could, for instance, be presented if the state-court decisions did not clearly allocate blame for the defect between Step–Saver and the manufacturers.) This meant that the declaratory judgment would not be conclusive. *See Step–Saver,* 912 F.2d at 643. The *Step–Saver* court also observed that Step–Saver's request for a declaratory judgment amounted to a request for an advisory opinion, because Step–Saver sought a declaration as to a contingency.

The declaratory relief requested by Home seems to be similarly contingent. Consider what would occur if, in the pending state-court action, a jury were to reach a verdict for Strausser on her legal malpractice, breach of contract, breach of fiduciary duty, or unjust enrichment claims based either (a) only on a finding of negligent or reckless conduct by Perlberger, or (b) on unclear grounds. In the first case, the declaratory judgment would be irrelevant; in the second, its applicability would be uncertain, requiring further court proceedings. These are precisely the circumstances that led the *Step–Saver* court to find that a declaratory judgment in that case would not be conclusive. This court must come to the same conclusion.[2]

---

1. A further question is which parties are to be considered for purposes of determining adversity. Strausser observes that Perlberger agrees with Home that his conduct was not within the "professional services" condition, suggesting that the interests of the two are not adverse. Home replies, however, that Home and Strausser have adverse interests, and argues that this degree of adversity should suffice for purposes of this case. Strausser, Home notes, is an indispensable party, and the Third Circuit has found that injured parties can bring declaratory judgment actions against insurers to establish coverage, *Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 353 (3rd Cir.1986), so that it is not inappropriate for Home correspondingly to assert non-coverage against Strausser.

2. The defect in Home's request is that Home did not ask this court to find the facts that would form the basis for its declaratory judgment. This is not to say that Home's pursuit of a declaratory judgment would have been more successful had Home asked the court to engage in fact-finding, however, as such a declaratory judgment request might be disfavored as interfering with a pending state-court proceeding. *See infra.*

For purposes of analytical completeness, the court will now consider the third element of the *Step–Saver* analysis, "utility". It appears that Home does indeed have an adequate case as to the utility of a declaratory judgment action. Home argues that the act of clarifying which claims are covered under its policy will facilitate settlement, avoiding the need for a prolonged jury trial. A similar argument was endorsed by the Third Circuit in *ACandS, Inc. v. Aetna Casualty & Surety Co.*, 666 F.2d 819, 823 (3d Cir.1981), which noted that "[i]t would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement."

### B. *Home's "Prior Acts" and "Professional Services" Claims.*

There is a strong possibility that a ruling by this court that Perlberger's conduct was outside the "prior acts" and "professional services" clauses of Home's policy, if it came before the conclusion of the state-court proceeding, would collaterally estop some aspects of that proceeding. If this court found that Perlberger did not render any professional services to Strausser after June 22, 1988, that finding could well preclude Strausser from making any claim of professional malpractice, breach of contract, or breach of fiduciary duty against Perlberger based on conduct occurring after that date. A finding that Perlberger *did* render professional services after June 22, 1988 could, correspondingly, result in preclusion adverse to Perlberger, possibly barring, for instance, a finding that Perlberger had no contract with Strausser during that period.

The courts have broad discretion to decline to entertain declaratory judgment proceedings during the pendency of parallel state-court proceedings. The extent and character of this discretion was first described by the Supreme Court in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and was recently reaffirmed by the Court in *Wilton v. Seven Falls Co.*, — U.S. —, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). *Brillhart* involved a federal declaratory judgment action filed by an insurer in anticipation of a state-court garnishment proceeding in which it was to be a defendant. In that case, the Court found that the federal courts had discretion to decide whether or not to entertain an action under the Declaratory Judgment Act, and should decline to hear cases in which "the questions in controversy between the parties in the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. *Wilton*, in reaffirming *Brillhart*, found that the test set forth by the Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), under which a court may decline jurisdiction in favor of a pending state-court action only in "exceptional" circumstances, *id.* at 818–20, 96 S.Ct. at 1246–47, did not apply to declaratory judgment actions, *Wilton*, — U.S. at — – —, 115 S.Ct. at 2141–42.

The facts of *Brillhart* and *Wilton* were somewhat different from those at issue here. In those cases, the parallel state-court proceeding raised essentially the same legal issues, between the same parties, as were at issue in the federal proceeding. Here, the parallel state-court proceeding does not involve the same parties; Home Insurance is not a party to the state action. Moreover, the state-court proceeding will not necessarily resolve all of the legal issues before this court. It may do so, of course: for instance, as to those claims on which Perlberger prevails in the state-court action, the question of Home's duty to indemnify him will be moot. Likewise, if judgment is entered against Perlberger on Strausser's fraud claim, the "wrongful acts" exception may well apply directly, freeing Home of any obligation to

indemnify Perlberger for any award of damages on that claim.[3]

*Brillhart* and *Wilton* are not limited to their facts, however. *Brillhart* set forth a list of factors for courts to take into account in the exercise of their discretion to entertain declaratory judgment actions, but emphasized that future cases might reveal other relevant factors, 316 U.S. at 495, 62 S.Ct. at 1175–76; *Wilton* endorsed this view, *see* —— U.S. at ——, 115 S.Ct. at 2141. Panels of the Fourth and Sixth Circuits, both considering cases resembling that before this court and both applying the *Brillhart* standard, have found it inappropriate for a district court to entertain such actions. *See Mitcheson v. Harris*, 955 F.2d 235, 237–40 (4th Cir.1992); *American Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir.1986).[4] In *Mitcheson*, tenants sued their landlord in state court for injuries allegedly caused by lead exposure on his property, and the landlord's insurer, after agreeing to defend its insured, filed a declaratory judgment action in federal court claiming that the lead poisoning was an "occurrence" that was not covered by the policy. The Sixth Circuit found that it was inappropriate for the district court to have heard the case, given the fact that it predominantly involved issues of state law that were most appropriately decided by the state itself, 955 F.2d at 237–38, and because of the interest in "resolving all litigation stemming from a single controversy in a single court system," *id.* at 239, and thereby avoiding, for instance, collateral estoppel of aspects of the state action by the federal action. A concurring opinion noted that a decision as to when the lead poisoning occurred for purposes of insurance coverage could significantly affect the state court action, and have preclusive effect, for instance, as to statute of limitations or laches defenses. *See id.* at 242 (Hall, J., concurring).

The facts of *Evans* are similar, and involved the question whether the conduct of an insured lawyer was within a malpractice insurance policy's "dishonesty" exclusion. 791 F.2d at 62. *Evans* applied a five-part test for the exercise of a district court's discretion to hear a declaratory judgment action; one of the included elements was "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Id.* at 63.[5] The *Evans* test has been applied in the Eastern District of Pennsylvania, although in a case with facts somewhat different from those at issue here. *See Nationwide Mutual Insurance Company v. Flynn*, 704 F.Supp. 592, 594 (E.D.Pa.1988).

Given the substantial risk that a pronouncement by this court on the applicability of the "prior events" and "professional services" clauses of Home's policy would have a preclusive effect on the pending state-court proceedings, this court will stay any consideration of those aspects of Home's complaint until the latter proceedings are concluded. *See Wilton*, —— U.S. at —— n. 2, 115 S.Ct. at 2143 n. 2 ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").

## IV. *Strausser's Counterclaim for Fees and Costs*

Strausser argues that she is entitled to an award of legal fees and costs under

---

**3.** The state court may also be able to assist in resolving questions as to the applicability of the "prior acts" and "professional services" provisions by exercising its discretion to permit special interrogatories to be submitted to the jury.

**4.** In doing so, the *Evans* court reviewed the trial court's decision to entertain the declaratory judgment action *de novo*, *see* 791 F.2d at 63, and the *Harris* court applied a similar standard, *see* 955 F.2d at 242 (Hall, J., concurring) (noting that the majority's standard of review was unclear, but appeared to be *de novo*). It is possible that one or both circuit courts might have allowed the

challenged district court decision to stand under the "abuse of discretion" standard of appellate review endorsed by the Supreme Court in *Wilton, see* —— U.S. at ——, 115 S.Ct. at 2144.

**5.** The other elements are "whether the judgment would settle the controversy," "whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue," "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata,'" and "whether there is an alternative remedy that is better or more effective". *Id.*

New Jersey law, and, in the alternative, under Pennsylvania and federal law. Strausser provides no legal argument as to the basis for her request for costs, and the court will therefore disregard this request. Turning to Strausser's request for legal fees, the court finds that the Pennsylvania rule for attorney's fee awards, not the New Jersey or federal rule, applies. A federal court sitting in diversity is bound to apply the choice-of-law rules of the forum state, which in this case is Pennsylvania. *See Klaxon Co. v. Stentor Electric Manuf. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). There seems to be no room to doubt that the Pennsylvania courts would conclude that settled choice-of-law principles, applicable in Pennsylvania as in other states, would mandate the application of the substantive law of Pennsylvania to the central dispute in this action.[6] The substantive law of Pennsylvania also governs the subsidiary issue of attorney's fees. *See First State Underwriters v. Travelers Ins. Co.,* 803 F.2d 1308, 1318 (3rd Cir.1986).

■ In 1986, in *First State,* the Third Circuit predicted that the Pennsylvania courts would find that awards of attorney's fees are appropriate in cases of "bad faith" or "obdurate" behavior. *See First State,* 803 F.2d at 1318. And that prediction has been vindicated. *See, e.g., Marino v. General Accident Ins. Co.,* 416 Pa.Super. 1, 9, 610 A.2d 477, 481 (1992). Strausser has not shown such behavior by Home in this case. Strausser argues that Home's complaint was filed with the sole purpose of delaying or interfering with the pending state-court action. This court does not agree; Home does have a valid interest in clarifying its duties to its insured, and, as the foregoing discussion suggests, it was by no means a legal certainty that the federal courts would decline to entertain Home's declaratory judgment action. Thus, Strausser's motion for an award of fees must be denied.

### V. *Conclusion*

For the foregoing reasons, Home's request for a declaratory judgment as to the "prior acts" and "professional services" provisions of its policy will be stayed, and the remainder of Home's complaint will be dismissed.

There are a number of outstanding motions relating to discovery disputes in this matter. Because Home's complaint will be dismissed in part and stayed in part, discovery will cease, rendering these motions moot. Therefore, these motions will be dismissed.

An appropriate order accompanies this opinion.

### *ORDER*

For the reasons set forth in the memorandum filed herewith, it is ORDERED:

1. that Diane Strausser's Motion for Judgment on the Pleadings (doc. no. 14) is GRANTED in part and DENIED in part. Home Insurance Company's request for a declaratory judgment as to its duty to defend Norman Perlberger, Esq. is DISMISSED without prejudice; its request for a declaratory judgment as to its duty to indemnify Norman Perlberger is STAYED as to the "prior acts" and "professional services" provisions in Home's policy, and DISMISSED without prejudice as to the remaining provisions cited by Home;

2. that Home Insurance Company's Motion for Judgment on the Pleadings as to Diane Strausser's counterclaim for fees and costs (doc. no. 16) is GRANTED, and the counterclaim is DISMISSED;

3. that Home Insurance Company's Motion for a Protective Order (doc. no. 13), and Diane Strausser's Motion for a Protective Order, Sanctions, and Stay of Discovery (doc. no 20) are DISMISSED as moot.

---

**6.** Although the insurance contract involved lacks a choice-of-law clause, the great majority of the conduct involved occurred in Pennsylvania, and some aspects of the case will entail inquiry into what types of conduct amount to the rendering of legal services in Pennsylvania. Insurance contracts are in any case virtually always governed by the law of the insured's domicile. *See Eugene F. Scoles and Peter Hay, Conflict of Laws* 666 (2nd ed. 1992).