**LEGION INDEMNITY COMPANY,**
**Plaintiff.**

v.

**CARESTATE AMBULANCE, INC., Slawomir Cieloszcyk, Ruslan Ilehuk, Ivan Tkach, Star Technical Institute, Inc., Ralph Beswick, Jr., Rose Wiegand, Gregory Sverdlev, Defendants.**

**No. CIV. A. 00–4831.**

United States District Court,
E.D. Pennsylvania.

May 3, 2001.

---

1. By stipulation filed April 20, 2001, the parties dismissed all claims against defendant Great Dane Trailers, Inc.

Robert D. Billet, Russell S. Massey, Billet and Connor, Philadelphia, PA, for plaintiff.

## MEMORANDUM

GILES, Chief Judge.

### I. Introduction

Legion Indemnity Company ("Legion"), brings this action against its insured, CareStat Ambulance, Inc. and its employees Slawomir Cieloczyk, Gregory Sverdlev, Ruslan Ilehuk, and Ivan Tkach (collectively "CareStat"), and the underlying claimants Ralph Mr. Beswick, Jr. ("Mr.Beswick"), and Rose Wiegand ("Ms.Wiegand"), for a declaratory judgment regarding an insurance policy that Legion sold to CareStat. Legion seeks a declaration of its coverage with respect to an underlying action that Mr. Beswick and Ms. Wiegand have brought against CareStat in *Estate of Beswick v. City of Philadelphia*, No. 00–CV–1304 (E.D. Pa. filed April 20, 2000) ("Second Amended Complaint").

Mr. Beswick and Ms. Wiegand filed a Motion for Summary Judgment of Legion's Declaratory Judgment Complaint.[1]

---

1. Mr. Beswick and Ms. Wiegand filed a Motion for Summary Judgment on February 9, 2001. Legion filed an Amended Declaratory Judgment Complaint on March 12, 2001.

Legion filed a Cross–Motion for Summary Judgment.

Mr. Beswick and Ms. Wiegand seek a declaratory judgment as to Legion's duty to defend CareStat, and a declaration that it is premature for this court to rule on the issue of indemnification. Legion seeks a declaration as to the potential amount that Legion would have to indemnify CareStat if CareStat were to be found liable, a declaration of what claims alleged by Mr. Beswick and Ms. Wiegand are potentially covered by the Legion General Policy and its Addenda, and a declaration as to what provisions of Legion's General Policy or its Addenda are implicated by Mr. Beswick and Ms. Wiegand's claims. These declaratory requests are ripe for decision since the proper declaratory relief can be determined by a plain reading of the provisions of the insurance policy and the allegations in the complaint in the underlying case.

For the reasons stated below, Mr. Beswick and Ms. Wiegand's Motion for Summary Judgment will be denied and Legion's Cross–Motion for Summary Judgment will be granted. A declaration that there is a duty by Legion to defend CareStat is not necessary at this time. Legion has tendered an on-going defense of CareStat and is not contesting its duty to defend.[2] (Pl.'s Reply Br. in Supp. of its Cross–Mot. for Summ. J. at 2.)

## II. Factual Background

The factual background of the underlying case is outlined in detail in *Beswick v. City of Philadelphia*, No. CIV.A.00–1304, 2001 WL 210292 (E.D.Pa. March 1, 2001), and the court only relates the facts as necessary for an understanding of the declaratory judgement action. Mr. Beswick and Ms. Wiegand, Co–Administrators of the Estate of Ralph Beswick, Sr., have brought a federal and state tort action against many defendants.

These claims all arise from the death of Ralph Beswick, Sr. on February 11, 2000. On that date he collapsed on the floor of his home. Ms. Wiegand dialed 911 and told the dispatcher, Julia Rodriguez ("Ms. Rodriguez"), that he needed urgent assistance and requested an ambulance. It is alleged that Ms. Rodriguez then chose to violate an established regulation that requires 911 operators to refer all emergency medical calls to the Fire Department, which then dispatches Fire Rescue Units appropriately equipped and staffed to respond to such emergencies. She called a private ambulance company with which she worked in her off-duty hours rather than entering the details of the call into the City's Fire Department emergency response system.

On the night in question, immediately after speaking with the 911 caller, Ms. Rodriguez spoke to Slawomir Cieloszcyk ("Mr.Cieloszcyk"), the owner and dispatcher of CareStat. After advising Mr. Cieloszcyk that Ralph Beswick, Sr. was age 65 and unconscious, Ms. Rodriguez asked how long it would take CareStat to get to the Beswick home. Mr. Cieloszcyk estimated a time of fifteen minutes. He ended the conversation by saying, "We're on the

---

The parties treated Mr. Beswick and Ms. Wiegand's Summary Judgment Motion as applying to the Amended Declaratory Judgment Complaint and the court also proceeds in this manner.

2. "An insurer is required to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *Home Ins. Co. v. Perlberger*, 900 F.Supp. 768, 771–72 (E.D.Pa.1995) (quoting *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*, 766 F.Supp. 324, 329 (E.D.Pa.1991)). There is no contention by Legion that Count III of Mr. Beswick and Ms. Wiegand's Second Amended Complaint does not fall within the coverage of the insurance policy.

way." Contrary to Pennsylvania's statutory requirements applicable to private ambulances, Mr. Cieloszcyk gave the assignment to employees Ruslan Ilehuk and Ivan Tkach, neither of whom was certified as "Advanced Life Support" or "Basic Life Support" systems personnel, and neither of whom was licensed for emergency vehicle operations.

About ten minutes after the first 911 call had been made, because there was yet no emergency vehicle at the Beswicks' home, Ms. Wiegand's sister called 911 again, at 8:02 p.m., to ask whether rescue services had already been dispatched to the Beswicks' address. This call was also received and handled by Ms. Rodriguez. Despite this second urgent call, Ms. Rodriguez still did not enter the call into the City's emergency dispatch system. She relied upon a belief that CareStat was on the way to the Beswicks' home as Mr. Cieloszcyk had promised. After a third call by Ms. Wiegand was handled by another dispatcher and a Fire department paramedic unit was dispatched, Ms. Rodriguez called Mr. Cieloszcyk at CareStat and told him that a City paramedic unit was responding to the Beswick home, and requested that he hide her involvement in the mishandling of the Beswick 911 calls. CareStat did not render any first-aid to Ralph Beswick, Sr. on the night of his death.

Only the state negligence claims against CareStat and its owners and employees are relevant for this declaratory judgment action.

Legion had issued a general liability insurance policy, GL10552323, to CareStat for the policy period January 11, 2000 to January 11, 2001 and Legion has been providing CareStat with an on-going defense in the underlying case. Legion seeks a declaration of its potential coverage if CareStat were to be found liable to Mr. Beswick and Ms. Wiegand.

### A. The Insurance Policy

The General Policy, GL10552323, that Legion issued to CareStat contains the following relevant provisions:

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies ... (General Policy Section I. Coverages A. 1a.)

 b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory ..."(General Policy Section I. Coverages A. b(1).)

2. Definition

 a. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. (General Policy Section V. 3.)

 b. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (General Policy Section V. 12.)

3. Exclusions

 a. This insurance does not apply to:

 (a) Expected or Intended Injury

 "Bodily injury" or "property damage" expected or intended from the standpoint of the insured ... (General Policy Section I. Coverages A. 2a.)

The Professional Liability Exclusion, PS–1, modifies the General Policy and excludes coverage for all conduct by the in-

sured involved with rendering "professional services." The clause states as follows:

It is agreed that this policy shall not apply to liability arising out of the rendering of or failure to render professional services, any error or omission, malpractice or mistake of a professional nature committed by or on behalf of the "Insured" in the conduct of any of the "Insured's" business activities.

(Professional Liability Exclusion PS–1.)

The General Policy contains a Professional Coverage Part Addendum, UN1010–PL ("Professional Addendum"), which supplements the General Policy and provides coverage for acts of negligence arising out of "professional incidents." The Professional Addendum contains the following relevant provisions:

1. Insuring Agreement

a. We will pay those sums the insured become legally obligated to pay as damages because of any "bodily injury"... to which this coverage part applied caused by a "professional incident." (Professional Addendum Coverage D. Section I. 1a.)

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A. B. and D. (*Id.*)

2. Definition

"Professional Incident" means any negligent act or omission:

a. In the furnishing of healthcare services including the furnishing of food, beverages, medications ... (Professional Addendum Coverage D. Section V. 6a.)

Any such act or omission together with the subsequent or related acts or omissions in providing the above services to any one person shall be considered one "professional incident."

(Professional Addendum Coverage D. Section V. 6.)

3. Limits of Coverage under the Professional Addendum

a. $500,000 for each professional incident

b. $1,000,000 general aggregate.

(Professional Addendum Coverage D. Chart.)

## B. Complaint in the Underlying Suit

The Second Amended Complaint alleges the following causes of action against CareStat:

(a) Count III asserts negligence, gross negligence, and recklessness against Ms. Rodriguez, CareStat, Mr. Cielozczyk, Mr. Sverdlev, Mr. Ilehuk, Mr. Tkach, Star Technical Institute, and John/Jane Doe;

(b) Count IV asserts civil conspiracy/fraud against Ms. Rodriguez, Mr. Cielozczyk, Mr. Sverdlev, Mr. Ilehuk, Mr. Tkach, Star Technical Institute and John/Jane Doe;

(c) Count VII asserts negligent infliction of emotional distress against Ms. Rodriguez, CareStat, Mr. Cielozczyk, Mr. Sverdlev, Mr. Ilehuk, Mr. Tkach, Star Technical Institute, and John/Jane Doe;

(d) Punitive damages are also demanded.

## III. Discussion

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.

R.Civ.P. 56. To survive a motion for summary judgment, the non-movant must establish that there is a genuine issue of material fact by coming forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56 (e), quoted in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Insurance Contracts

█ Interpretation of the Legion insurance policy is governed by Pennsylvania insurance law. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that choice-of-law decisions are governed by the choice-of-law rules of the forum state). The presumptions which apply to an insurance contract depend upon whether the policy language at issue is ambiguous or unambiguous. A provision is ambiguous if "reasonably intelligent" people "on considering it in the context of the entire policy would honestly differ as to its meaning." Northbrook Ins. Co. v. Kuljian Corp., 690 F.2d 368, 372 (3d Cir.1982). In deciding whether the policy language at issue is ambiguous, the court should read the policy with an eye toward avoiding ambiguities and take care not to torture policy language to create uncertainties where none exist. See id.

█ If policy language is ambiguous, the ambiguities are to be resolved in favor of the insured and in a manner consistent with the reasonable expectations that the insured had when he contracted for coverage. See Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300,

469 A.2d 563, 566 (1983). This is meant to preclude insurers from insulating themselves from their contractual obligations by inserting overly subtle or technical interpretations in an unfair attempt to defeat the reasonable expectations of the insured. Id.

█ An unambiguous insurance policy must be read by a court as a whole and construed according to the plain meaning of its terms. See Gene and Harvey Builders v. Pennsylvania Mfrs. Ass'n Ins., 512 Pa. 420, 517 A.2d 910, 913 (1986); American Planned Communities v. State Farm Ins. Co., 28 F.Supp.2d 964, 965 (E.D.Pa. 1998). In keeping with this principle, plainly-worded coverage exclusions are given effect so long as they are conspicuously displayed. See Pacific Indemnity v. Linn, 766 F.2d 754, 761 (3d Cir.1985); Kline v. Kemper Group, 826 F.Supp. 123, 127 (M.D.Pa.1993).

### C. Amount of CareStat's Potential Insurance Coverage [3]

█ Legion argues that its policy potentially covers only $500,000, pursuant to the Professional Addendum, for negligent acts arising from operation of its emergency ambulance business. (Pl.'s Second Reply Br. in Supp. of its Cross–Mot. for Summ. J. at 2.) It also contends that all of the claims asserted under Count III of the Second Amended Complaint fall within the Professional Liability Exclusion, and therefore, any coverage that exists is through the Professional Addendum. (Id.)

---

3. The court does not agree with defendants' contention, see Home Ins. Co. v. Perlberger, 900 F.Supp. 768, 772–74 (E.D.Pa.1995), that the issue of amount of indemnification is not ripe. The matters for which Legion seeks declarations can be determined from the plain language of the Second Amended Complaint and the plain language of Legion's policy. Home is distinguishable. Legion's requests for declaratory relief are not contingent upon facts that need to be determined in the underlying action as was the situation in Home, 900 F.Supp. at 773.

Mr. Beswick and Ms. Wiegand argue that the insurance limit should be $1 million because some of CareStat's wrongful conduct should be covered under the General Policy, and not excluded by the Professional Liability Exclusion, and that other conduct, excluded by the Professional Liability Exclusion, should be covered under the Professional Addendum. They also claim that there is nothing in the insurance policy that precludes recovery under both the General Policy and the Professional Addendum. (Defs.' Sur reply in Supp. of their Summ. J. Mot. at 2–3.)[4]

In Count III of the Second Amended Complaint, Mr. Beswick and Ms. Wiegand allege that CareStat is liable, among other things, for driving negligently, for failing to timely dispatch an ambulance, and for failing to notify Julie Rodriguez that an ambulance would not be dispatched. (Second Am. Compl. ¶ 146 C, D, & H.) Mr. Beswick and Ms. Wiegand argue that (1) by definition and (2) because CareStat "never reached the scene," neither of the above mentioned actions involves the performance of "professional services," and that, these acts are covered by the General Policy, and are not excluded under the Professional Liability Exclusion. (Mem. of Law in Opp'n to Pl.'s Counter Mot. for

Summ. J. at 5.) They further maintain that other allegations in Count III constitute "negligence in the furnishing of ambulance services," covered under the Professional Addendum, and that recovery of $500,000 is permitted by the policy's language under both the General Liability Policy and the Professional Addendum for a total of $1 million. (Defs.' Sur reply in Supp. of their Summ. J. Mot. at 2–3.)

To support their contention that not all of the negligence by CareStat, as alleged in the Second Amended Complaint, constitutes performance of a "professional service," Mr. Beswick and Ms. Wiegand reference a definition of the phrase in *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 984 (3d Cir.1988):

> A "professional" act or service is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual . . .

The *Harad* court's definition of "professional service" only supports Legion's contention that *all* of the claims under Count III of the Second Amended Complaint fall within the Professional Liability Exclusion.

---

4. Mr. Beswick and Ms. Wiegand's statements in their Sur reply Brief are hard to reconcile. They state that CareStat's failure to dispatch an ambulance timely, and its failure to tell Julie Rodriguez that no ambulance was available, should not be held to constitute "professional services" and are not excluded by the Professional Liability Exclusion and therefore, that coverage for compensatory damages in the amount of $500,000 should exist under the General Liability section of the policy. (Defs.' Sur reply in Supp. of their Summ. J. Mot. at 2.) In the next paragraph Mr. Beswick and Ms. Wiegand contend that CareStat is also entitled to $500,000 in coverage under the Professional Addendum for injuries caused by the negligence in the furnishing of ambulance services and therefore, that the

negligent acts of failing to timely dispatch an ambulance, and of failing to tell Julie Rodriguez that no ambulance was available, are covered by that coverage part. (*Id.* at 3.)

It appears that Mr. Beswick and Ms. Wiegand are contending that the acts of (1) failing to dispatch an ambulance in a timely manner and (2) failing to tell Julie Rodriguez that no ambulance was available, are not "professional services" for purposes of the Professional Liability Exclusion but yet are "professional services" for purposes of the Professional Addendum. Such contentions, if intended, cannot be reconciled. The court finds that both alleged negligent acts are clearly "professional services" for purposes of the whole policy.

(Pl.'s Second Reply Br. in Supp. of its Cross–Mot. for Summ. J. at 2.)[5]

Legion's professional service necessarily is that of providing a timely response to emergencies. A part of such service is the timely arrival of an ambulance at its destination or informing the dispatcher of inability to arrive in a timely manner should an intervening event occur such as a traffic accident en route so the injured person will not continue to rely to their detriment.[6] Thus, the allegations in Count III of the Second Amended Complaint, ¶ 146 A–I, all arise from CareStat's business of providing emergency ambulance services. These allegations are all of acts excluded from coverage under the General Policy by the Professional Liability Exclusion. Any coverage available is pursuant only to the Professional Addendum where the limit is $500,000 per professional incident.

### D. *Recklessness and Gross Negligence*

█ As discussed *supra*, any coverage for the claims alleged in Count III, to the extent that they are covered, is pursuant to the Professional Addendum. While all the claims alleged in Count III are excluded from coverage under the General Policy by the Professional Liability Exclusion, all

are not "professional incidents" as required for coverage under the Professional Addendum. The Professional Addendum provides coverage only for claims of negligence and carelessness, and does not cover claims of recklessness and gross negligence, even though recklessness and gross negligence are not explicitly excluded under the Professional Addendum. Rather, the Professional Addendum states that this policy applies ... only if the "bodily injury" ... is caused by a "professional incident." (Professional Addendum Coverage D. Section I. 1a.) A "'professional incident' is defined as any negligent act or omission in the furnishing of healthcare services ..." (Professional Addendum Coverage D Section V. 6a.)

█ Although recklessness and gross negligence are not specifically excluded, Legion correctly observes that "professional incident" is limited by definition to "any *negligent* act or omission ... in the furnishing of healthcare services ..." (Pl.'s Cross–Mot. for Summ. J. at 11.) As effect must be given to the plain language of an insurance policy as written, the court holds that only negligent or careless acts are covered under the Professional Addendum of the Legion policy.[7] Ac-

---

5. There is no dispute that coverage under the Professional Addendum is limited to $500,000 per professional incident and that failure to provide emergency ambulance services to Ralph Beswick, Sr. constitutes only one professional incident. The disagreement between the parties is limited to whether the specific acts or acts constituting that failure can be covered under both the General Policy and the Professional Addendum or only under the Professional Addendum.

6. The Second Amended Complaint describes how CareStat's negligent driving caused the failure to provide emergency services. Paragraph 146, subsection H alleges that CareStat's driving in a negligent manner under the circumstances, prevented them from arriving expeditiously at the decedent's home. (Sec-

ond Amended Complaint ¶ 146 H.) Thus, that negligence, as pled, is excluded from coverage under the General Policy by the Professional Liability Exclusion.

7. The determination that the Professional Liability Exclusion of the policy excludes all of the Count III claims and any available coverage is pursuant to the Professional Addendum is important because this court finds that claims for recklessness and gross negligence are not necessarily excluded under the General Policy unless they fall within a specific exclusion. In this case, Legion's particular claims of gross negligence and recklessness are excluded by the Professional Liability Exclusion.

Recklessness and gross negligence are not excluded under the General Policy by the

cordingly, Legion is not liable for any claims of recklessness or gross negligence against CareStat.

### E. Fraud and Civil Conspiracy

 Mr. Beswick and Ms. Wiegand's claims for both fraud and civil conspiracy under Count IV of the Second Amended Complaint, claims involving allegations of intentional conduct, also are not covered under Legion's General Policy or by any of its addenda. Mr. Beswick and Ms. Wiegand, in their Second Amended Complaint, have alleged a civil conspiracy stating that "in December of 1999, ... Ms. Rodriguez, Ruslan Illehuk, and Ivan Tkach came to an agreement that Ms. Rodriguez would begin forwarding emergency 911 calls to CareStat Ambulance in return for compensation." (Second Am. Compl. ¶ 149.) The elements of civil conspiracy are (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of a common purpose, and (3) actual legal damage. *Strickland v. University of Scranton,* 700 A.2d 979, 987–88 (Pa.Super.1997). To prove a conspiracy, Pennsylvania courts have required proof of malice or an intent to injure. *Id.* Thus, to prove a conspiracy in the underlying case,

requirement that bodily injury result from an "occurrence" (General Policy Section I. Coverage A. 1. b(1); Section V. 12) or the policy's exclusion of conduct which is "expected or intended from the standpoint of the insured." (General Policy Section I. Coverages A. 2a.) The Pennsylvania Supreme Court has interpreted a policy definition of "occurrence," substantially the same as the definition in the Legion policy, to mean an "accident," harm brought about by negligent or reckless conduct, but not by an intentional act on the part of the insured. *See Kline v. Kemper Group,* 826 F.Supp. at 128–129 (quoting *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246, 247 (1988)). Thus, claims of recklessness and gross negligence are explicitly not excluded by this interpretation of the term "occurrence."

Moreover, the third circuit has discussed the narrow interpretation that should be used in applying clauses in insurance contracts excluding conduct which is "expected or intended from the standpoint of the insured." The third circuit has stated, "[w]e hold that such a clause excludes only injury and damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause the consequences of his act or if acted knowing that such consequences were substantially certain to result." *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 460 (3d. Cir.1993).

Pennsylvania courts have adopted the RESTATEMENT (SECOND) OF TORTS § 8A definition of Recklessness: "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *See United Services Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 989–90 (1986).

Pennsylvania courts have consistently used the following definition of gross negligence: a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care. *Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159, 1164 (1997); *Bloom v. DuBois Regional Medical Center,* 409 Pa.Super. 83, 597 A.2d 671, 679 (1990).

Recklessness and gross negligence, as defined under Pennsylvania law, do not fall within the policy exclusion for "expected and intended injury" since these claims do not require the same intent to cause a consequence as required by the "expected and intended conduct" clause in the insurance policy. Thus, the General Policy would not exclude coverage for recklessness and gross negligence while the Professional Addendum, with its "negligent act or omission" specification does exclude these claims.

Mr. Beswick and Ms. Wiegand would have to prove malice or intent to injure. Pennsylvania courts have consistently held that intentional acts are not covered under insurance policies that define "occurrences" as accidents. *Harvey Builders,* 517 A.2d at 913 (stating that an intentional act is not an accident). The Legion policy defines an "occurrence" as an accident, as discussed *supra.* Therefore, a civil conspiracy, such as alleged in the complaint, is not covered under the Legion insurance policy.

 Similarly, under Pennsylvania law, intent is a required element of fraud. As such, fraud is not covered under the Legion insurance policy. The complaint alleges that CareStat committed fraud by accepting the 911 call and holding itself out to be a lawfully authorized ambulance. (Second Am. Compl. ¶ 160.) In an earlier paragraph, the complaint states that CareStat employees accepted emergency calls "despite knowing full well that they were not qualified or experienced to handle such calls." (*Id.* ¶ 155.) The elements of fraud are (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994). As discussed above, intentional acts are not covered under insurance policies that define "occurrences" as accidents. *Harvey Builders,* 517 A.2d at 913. Fraud is intentional conduct as it requires a material misrepresentation "with the intent of misleading another . . ." and thus is not within the scope of an "occurrence" under the General Policy.

Claims of civil conspiracy and fraud are not covered under the Professional Addendum because these alleged acts are not "professional incidents." Conspiracy and fraud allegations do not encompass rendering healthcare services professionally and therefore are not "professional incidents." These allegations also are not a "negligent act or omission" as required to be a "professional incident."

### F. Negligent Infliction of Emotional Distress

 Mr. Beswick and Ms. Wiegand's claim for negligent infliction of emotional distress under Count VII in the Second Amended Complaint is not covered under the General Policy or under any of its addenda, including the Professional Addendum. Both parties agree that to trigger coverage under an insurance policy, the plaintiff in an underlying case must allege that some physical injury resulted. However, the parties disagree over whether physical manifestations of emotional injuries can trigger coverage.

Mr. Beswick and Ms. Wiegand argue that CareStat's insurance coverage does apply to the claim by Ms. Wiegand under Count VII of the Second Amended Complaint for negligent infliction of emotional distress. Because Ms. Wiegand has "difficulty sleeping, hyperventilates, and has a skin condition due to the stress of having watched her husband die as a result of the negligence of CareStat," Mr. Beswick and Ms. Wiegand contend that "this would be a physical manifestation of her emotional injury and coverage would be triggered." (Mem. of Law in Opp'n to Pl.'s Counter Mot. for Summ. J. at 9.) Legion argues that emotional injuries that manifest themselves as physical symptoms are not covered under the insurance policy as these injuries are not the result of "bodily injury" and regardless of what physical symptoms Ms. Wiegand is suffering from, they resulted solely from her mental state, as

she did not sustain any bodily injury. (Pl.'s Reply Br. in Supp. of its Cross–Mot. for Summ. J. at 5.)

 Courts applying Pennsylvania law have held that there is no coverage for emotional distress since it does not constitute "bodily injury" under insurance policies. *See Kline*, 826 F.Supp. at 129–30 (characterizing Pennsylvania's insurance law as soundly rejecting the contention that policy definition of injury or bodily injury encompass mental or emotional harm); *Jackson v. Travelers Ins. Co.*, 414 Pa.Super. 336, 606 A.2d 1384, 1386–87 (1992). The Pennsylvania Superior Court has also determined that physical symptoms that result from mental and emotional harm do not constitute "bodily injury" for purposes of insurance law. *Zerr v. Erie Ins. Exchange*, 446 Pa.Super. 451, 667 A.2d 237 (1995).[8]

In *Zerr*, a plaintiff had to swerve his car off the Pennsylvania Turnpike to avoid· a collision with a tractor trailer changing lanes too quickly. He suffered no physical harm at the scene but subsequently began suffering emotional injuries with numerous physical symptoms. *Id.* at 453, 667 A.2d 237. The trial judge noted that the plaintiff was unable to return to work and that a therapist diagnosed him as suffering from Posttraumatic Stress Disorder, globus hystericus, anxiety attacks, driving phobia and other physical symptoms as a result of the emotional experience on the roadway. *Id.*

Although *Zerr* deals with automobile insurance law and the Motor Vehicle Financial Responsibility Law, the court finds that its reasoning, that physical symptoms resulting from mental or emotional harm do not constitute "bodily injury" for purposes of insurance law, is applicable here. Ms. Wiegand allegedly suffered emotional harm when she watched her common law husband die. Only subsequently did she allegedly experience physical symptoms. Thus, it is clear from the allegations of the underlying complaint and the plain language of the Legion policy that Mr. Beswick and Ms. Wiegand's claim for negligent infliction of emotional distress is not covered under the policy.[9]

### G. Punitive Damages

 Legion's insurance policy expressly excludes coverage for punitive damages.

---

8. The definition of "bodily injury" in the insurance policy at issue in *Zerr* is not materially different from the definition in the Legion policy. In *Zerr*, the insurance policy defined "bodily injury" as "accidental bodily harm to a person and that person's resulting illness, disease or death." 667 A.2d at 238. The Legion policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from, any of these at anytime." (General Policy Section V. 3.)

9. Mr. Beswick and Ms. Wiegand believe the reason that Legion denies Ms. Wiegand's claim for emotional distress and its resulting physical manifestations constitute "bodily injury," is that Legion is confusing "trigger of coverage" and "scope of coverage." (Defs.' Sur reply in Supp. of their Summ. J. Mot. at 3.) Mr. Beswick and Ms. Wiegand contend that Ms. Wiegand's claim for bodily injury triggers the insurance coverage and the policy then affords coverage for all of the consequential damages arising out of the covered bodily injury. *Id.*

Legion argues that it is a question of policy interpretation ("scope of coverage") whether Ms. Wiegand's claim for emotional distress is a claim for "bodily injury" and Pennsylvania law is clear that emotional distress and resulting physical manifestations are not "bodily injury" for purposes of insurance policies. (Pl.'s Second Reply in Supp. of Mot. for Summ. J. at 3.)

The court finds that Ms. Wiegand's claim for emotional distress is a question of "scope of coverage" and since there is no cognizable "bodily injury" claim by Ms. Wiegand, according to the reasoning of Mr. Beswick and Ms. Wiegand, there is no coverage for consequential damages.

A provision of the policy states that "this policy does not apply to a claim of or indemnification for punitive or exemplary damages." (Endorsement Exclusions, BWUN101, Section D. Punitive or Exemplary Damage Exclusion.)

This exclusion is plainly-worded and conspicuously displayed and is therefore given effect. *Pacific Indemnity*, 766 F.2d at 761.

### H. Personal and Advertising Injury Liability

The court adopts Legion's assertion, which Mr. Beswick and Ms. Wiegand have not contested, that there is no potential coverage for any of Mr. Beswick and Ms. Wiegand's claims under the General Policy Section for Personal and Advertising Injury. (General Policy Section I, Coverage B.) There is no allegation in the complaint that falls under the definition of either "advertising injury" or "personal injury."[10]

### I. Medical Payments

 The court also finds that there is no coverage under the Medical Payments provision of the General Policy for any of the claims alleged in the Second Amended Complaint. (General Policy Section I. Coverage C.) The Medical Payments provision, Coverage C of the General Policy,

is excluded by an endorsement that substitutes supplemental medical coverage for the coverage outlined under the General Policy. (Endorsement Exclusions, BWUN101, Section F. Medical Payments Exclusions.) This supplemental provision provides coverage for "expenses incurred by the 'insured' for the first aid to others at the time of an accident for 'bodily injury.'" (*Id.*) Thus, these supplemental payments are intended to pay medical expenses incurred by a person who has been rendered first-aid. There is no dispute that in this case no first-aid was administered by CareStat. Accordingly, coverage for first-aid expenses is not owed and there is no coverage pursuant to the Medical Payments provision of the General Policy.

### IV. Conclusion

For the foregoing reasons, the motion for summary judgment by Mr. Beswick and Ms. Wiegand is denied and the cross-motion for summary judgment by Legion is granted. An appropriate order follows.

### ORDER

AND NOW, this 2nd day of May, 2001, upon consideration of Defendants. Beswick and Wiegans's Motion for Summary Judgment and Plaitiff's Cross-Motion for Sum-

---

**10.** "Advertising injury" is defined in the policy as injury arising out of one of one or more of the following offenses:
 (a) [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
 (b) [o]ral or written publication of material that violates a person's right of privacy;
 (c) [m]isappropriation of advertising ideas or style of doing business; or
 (d) [i]nfringement of copyright, title or slogan. (General Policy Section V. 1.)
"Personal injury" is defined under the policy as injury, other than "bodily injury," arising out of one or more of the following offenses:

 (a) [f]alse arrest, detention or imprisonment;
 (b) [m]alicious prosecution;
 (c) [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
 (d) [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
 (e) [o]ral or written publication of material that violates a person's right to privacy. (*Id.* 13.)

mary Judgment, it hereby is ORDERED as follows:

 A. Defendants Beswick and Wiegand's Motion for Summary Judgment is DENIED;

 B. Plaintiff's Cross-Motion for Summary Judgment is GRANTED;

 C. The Court declares as a matter of law that:

 1. Insurance coverage under the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01, is limited to $500,000 for the claims in Count III of the Second Amended Complaint in *Estate of Beswick, et al v. City of Philadelphia*, et al., U.S.D.C., E.D. Pa., No.00-CV-13-4, pursuant to the "Profession Part Addendum" (Section I,. coverage D);

 2. The $500,000 of insurance coverage afforded for the claims of Count III of the Second Amended Complaint in *Estate of Beswick, et al. v. City of Philadelphia, et al.*, U.S.D.C., E.D. Pa. No. 00-CV-13-4, under the "Professional Coverage Part Addendum" (Section I, Coverage D) of the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01, is limited to claims of negligence and carelessness, and does not cover claims of recklessness and gross Negligence;

 3. Insurance Coverage under the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01, including its declaration pages, amendments and endorsements, does not apply to claims in Counts IV (conspiracy and fraud) and VII (negligent infliction of emotion distress) of the Second Amended Complaint in *Estate of Beswick, et al. v. City of Philadelphia, et al.*, U.S.D.C., E.D.Pa. No. 00-CV-1304;

 4. Insurance Coverage under the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01, including its declaration pages, amendments and endorsements, does not apply to claims of punitive damages in the Second Amended Complaint in *Estate of Beswick, et al. v. City of Philadelphia, et al.*, U.S.D.C., E.D.Pa. No. 00-CV-1304;

 5. Insurance Coverage under Section I, Coverage B of the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01 (personal and advertising injury), including its declaration pages, amendments and endorsements, does not apply to claims of punitive damages in the Second Amended Complaint in *Estate of Beswick, et al. v. City of Philadelphia, et al.*, U.S.D.C., E.D.Pa. No. 00-CV-1304;

 6. Insurance Coverage under Section I, Coverage C of the Commercial General Liability Insurance Policy of plaintiff Legion Indemnity Company, policy number GL10552323, policy period 1/11/00 through 1/11/01 (medical payments), including its declaration pages, amendments and endorsements, does not apply to claims of punitive damages

in the Second Amended Complaint in *Estate of Beswick, et al. v. City of Philadelphia, et al.,* U.S.D.C., E.D.Pa. No. 00-CV-1304.