Carl KLINE, Plaintiff,

v.

THE KEMPER GROUP,
et al., Defendants.

No. 4:CV–93–0204.

United States District Court,
M.D. Pennsylvania.

July 6, 1993.

---

Clifford A. Rieders, Williamsport, PA, for plaintiff.

Robert A. Gallagher, Mitchell Mitchell Gray & Gallagher, Williamsport, PA, Michael A. Plevyak, Malcolm & Riley, West Chester, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Carl Kline filed this declaratory judgment action [1] against the Kemper Group (Kemper) and the Chubb Group of Insurance Companies (Chubb), and other related insurance companies,[2] seeking a declaration that coverage exists over age-discrimination claims asserted by Kline against his former employer in another action filed before this court, *Kline v. Wall to Wall Sound & Video*, Civ. No. 3:CV–92–1472 (M.D.Pa.).

Wall to Wall Sound & Video (Wall to Wall) is currently in Chapter 11 bankruptcy, *In re: Wall to Wall Sound & Video*, 90–21761 (Bankr.E.D.Pa.).[3] On May 21, 1992, Kline and Wall to Wall entered into a stipulation in which Wall to Wall consented to Kline's receiving relief from the automatic stay imposed by its bankruptcy filing, so that Kline could proceed on his age discrimination claim in federal court.[4] Wall to Wall assigned to plaintiff "any and all insurance policies or coverage which inured to its benefit or which had an insurable interest in connection with plaintiff's ... claim". (Plaintiff's complaint, para. 23)

Kline then initiated this action to obtain a declaration of coverage from Wall to Wall's insurance carriers. The policies under which Kline asserts that coverage exists are comprehensive general liability policies issued by the defendant carriers and which were in effect from July 5, 1989 to July 5, 1990. Plaintiff's employment was terminated by Wall to Wall on March 9, 1990. There were several policies in effect at that time.

A comprehensive general liability policy (No. 3YE 717 156–01) issued by American (a Kemper-related company) provided primary coverage for bodily injury and property damage claims in the amount of $1 million per

---

**1.** 28 U.S.C. §§ 2201–2202. Section 2201(a) provides, in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
>
> 28 U.S.C. § 2201.

**2.** The other named defendants are American Manufacturers Mutual Insurance Company

(American) and Federal Insurance Company (Federal).

> American is Kemper-related company. The claims against the two companies will be addressed jointly, with both companies being referred to as "Kemper".
>
> Federal is Chubb-related company. The claims against the two companies will be addressed jointly, with both companies being referred to as "Kemper".

**3.** See: Plaintiff's complaint, exhibits "A", "B" and "C".

**4.** See: Plaintiff's complaint, exhibit "D".

occurrence and in the aggregate. A second policy issued by American provided first level excess coverage in the amount of $5 million per occurrence and $5 million in the aggregate for the policy year, subject to a retained limit of $10,000.00. Both coverages were stated in a single "combination policy".[5]

The next layer of excess coverage is provided by a commercial excess liability policy (No. (90) 7908–78–69) issued by Federal Insurance and the Chubb Group which provides excess coverage in the amount of $10 million per occurrence.

Plaintiff seeks a declaratory judgment declaring that defendants have a duty to defend Wall to Wall in the underlying action and to pay any judgments entered against Wall to Wall (Count I); a permanent injunction directing the defendant insurers to provide coverage for plaintiff's claims in the underlying ADEA[6] action and requiring defendants to pay any judgment rendered against Wall to Wall (Count II); and attorneys' fees based on the defendant carriers' alleged bad faith in refusing to defend Wall to Wall in the underlying action (Count III).

Before the court are Rule 12(b)(6) motions to dismiss by Kemper (Record Document No. 8) and Chubb (Record Document No. 9). Both groups of defendants seek dismissal on the ground that the plain language of the policies clearly does not afford coverage for the discrimination claims asserted by plaintiff in the underlying action. In support of their motion, defendants American/Kemper attach complete copies of the subject policies which are not attached to plaintiff's complaint. Because reference to the entire policy is necessary to decide defendants' motions, we will decide the motions as motions for summary judgment.[7] See Fed.R.Civ.P. 12(b)(6) and 56. We agree with defendants' interpretation of the policies and will enter summary judgment in their favor for the reasons discussed below.

## DISCUSSION

### Motion for summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2552 and 2553.

Issues of fact are "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–

---

**5.** A copy of the policy is attached to Kemper's motion to dismiss (Record Document No. 8) as an exhibit.

**6.** The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1988) ("ADEA"). Kline also asserts a claim under the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 952–963.

**7.** At a case management conference held June 24, 1993, plaintiff's counsel agreed that no further discovery was necessary and had no objection to the court's ruling on the outstanding motions as motions for summary judgment.

94 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### Pennsylvania insurance law

■■■ Interpretation of the policy and resolution of the question of defendants' duty to defend and indemnify are governed by Pennsylvania insurance law.[8] The presumptions which apply depend upon whether the policy language at issue is ambiguous or unambiguous. In deciding this question, the courts should read the policy with an eye toward avoiding ambiguities and take care not to torture policy language to create uncertainties where none exists. *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3d Cir.1982), (applying Pennsylvania law).

■■■ Policy language is ambiguous if reasonable persons could honestly differ as to its meaning, i.e., if it is susceptible of more than one meaning. If found to be ambiguous, the ambiguities are to be resolved in favor of the insured and in a manner consistent with his reasonable expectations when he contracted for coverage. This precludes insurers from insulating themselves from their contractual obligations by inserting "overly-subtle or technical interpretations" in an unfair attempt to defeat the reasonable expectations of the insured. *Standard Vene-*

*tian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 469 A.2d 563, 566 (1984) and *Harford Mutual Insurance Co. v. Moorhead,* 396 Pa.Super. 234, 578 A.2d 492, 495 (1990).[9] This rule favoring the insured applies even if the insured is a commercial or business entity and therefore, presumably knowledgeable about contracts and their legal implications. *Acands, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 973 (3d Cir.1985).

■■■ On the other hand, if policy language is found to be unambiguous, these presumptions do not come into play. *Imperial Casualty & Indemnity Co. v. High Concrete Structures, Inc.,* 858 F.2d 128 (3d Cir. 1988) (applying Pennsylvania law). The law gives effect to the plain language of the policy as written, *Harford, supra,* 578 A.2d at 495. In keeping with that principle, plainly-worded coverage exclusions are given effect so long as they are conspicuously displayed. There is no concomitant requirement that the insured have read or understood such exclusions. *Pacific Indemnity v. Linn,* 766 F.2d 754, 761 (3d Cir.1985) and *Berne v. Aetna Insurance Co.,* 604 F.Supp. 958, 960–61 (D.V.I.1985). Policy language which is otherwise clear is not rendered ambiguous because it requires the insured to read thoroughly and carefully to grasp the coverage received. *Viger v. Commercial Insurance Company of Newark, New Jersey,* 707 F.2d 769, 774 (3d Cir.1983).

■■■ Linked to policy interpretation on the question of coverage is the derivative question of the duty to defend and indemnify the insured. The insurer is obligated to

---

8. Choice-of-law decisions are governed by the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In this instance, Pennsylvania choice-of-law rules require application of Pennsylvania law. All of the events took place in Pennsylvania. The policies were issued here, Wall to Wall conducted business here, and Kline worked in one of Wall to Wall's Pennsylvania stores. No other state has any contact with the events giving rise to either this action or the state court action. *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964). Both sides agree that Pennsylvania law applies.

9. In diversity cases, the District Court is bound to follow the substantive law of the state in which the Court sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore this court is bound by the decisions of the Supreme Court of Pennsylvania. In the absence of an authoritative pronouncement from the highest court, district courts are obliged to give due regard to the decisions of the forum state's intermediate appellate court as an indicia of how the state's highest court would decide the issue. *Connecticut Mutual Life Insurance Co. v. Wyman,* 718 F.2d 63, 66 (3d Cir.1983) and *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 (3d Cir.1985).

defend an action filed against its insured if the allegations may potentially come within policy coverage unless and until the insurer can confine the claim to a recovery outside the bounds of coverage. *Imperial Casualty, supra,* 858 F.2d at 131–32; *Harford, supra,* 578 A.2d at 494. Any doubts regarding the insurer's duty to defend must be resolved in favor of the insured. *American Contract Bridge v. Nationwide Mutual Fire Insurance,* 752 F.2d 71, 76 (3d Cir.1985) and *D'Auria v. Zurich Insurance Company,* 352 Pa.Super. 231, 507 A.2d 857 (1986).

### American Manufacturers/Kemper Policies

 Policies issued by the four defendants provide several layers of primary and excess coverage. The comprehensive general liability policy (No. 3YE 717 156–02, a renewal of No. 3YE 717 156–01) issued by American (a Kemper-related company) provides the first layer of coverage. American's policy provides primary coverage for bodily injury liability and property damage liability to a limit of $1 million per occurrence and in the aggregate for the policy year. The commercial catastrophe policy (No. 3SG 015 507–02) issued by American provides the first level of excess coverage (for claims above American's primary coverage under the first policy) for claims in excess of $1 million per occurrence and in the aggregate, up to aggregate policy limits of $5 million.

Both policies provide coverage for "occurrences" as defined by policy provisions. An occurrence is defined by the comprehensive general policy as:

... an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The Broad Form Comprehensive General Liability Endorsement (broad form endorsement) to that policy expands this definition to include:

... any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Bodily injury is defined by the policy as:

... bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

Kemper's broad form endorsement also expands the policy to provide coverage for personal injury, defined as follows:

... injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction ...

(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing ...

Property damage is defined by the policy as:

... (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

American's commercial catastrophe (first excess) policy defines an occurrence as:

... an accident, including continuous or repeated exposure to substantially the same general harmful conditions and expressly excludes from coverage (labelled "Coverage B") "bodily injury" or "property damage" which is "expected or intended from the standpoint of the insured."

Under no reasonable interpretation of either policy can the claims asserted by plaintiff in the underlying action be considered an "occurrence" as defined by the respective policy provisions. The Pennsylvania Supreme Court has interpreted a policy definition of "occurrence" substantially the same

as the one at issue here to mean an "accident", i.e. harm brought about by negligent or reckless conduct, but not by an intentional act on the part of the insured. *Gene's Restaurant, Inc. v. Nationwide Insurance Company,* 519 Pa. 306, 548 A.2d 246, 247 (1988) (Policy definition of "occurrence" held not to include alleged "willful and malicious" assault by insured.) See also: *Terra Nova Insurance Co. v. North Carolina Ted, Inc.,* 715 F.Supp. 688 (E.D.Pa.1989) (applying Pennsylvania law).

Although there appears to be no Pennsylvania authority directly on point, this coverage issue was addressed by the Minnesota Court of Appeals in *Sage Company v. Insurance Company of North America,* 480 N.W.2d 695 (Minn.App.1992). Sage Company (Sage) filed a declaratory judgment action against its insurance carriers seeking a declaration of coverage and a duty to defend it against an age discrimination claim filed by a former employee. Sage had two policies, one with the Insurance Company of North America (INA) and one with Pacific Employers Insurance Company (Pacific). Both policies based coverage on the existence of an "occurrence" as defined by the policy. An "occurrence" was defined by the Pacific policy as

> ... an accident, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or in bodily injury, personal injury, or property damage. Such injury or damage must be neither expected nor intended by the insured.

*Id.* at 697–98. The INA policy defined an occurrence as

> ... an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured.

*Id.* at 698. The court stated that it was obvious that three conditions must combine for coverage to exist. There must be 1) an accident; 2) resulting in bodily injury or personal injury; 3) which was neither expected or intended by the insured. The court went on to hold that discharge of an employee is not an accidental act within the meaning of the policy and concluded, on that basis,

that Sage's carriers had no duty to defend the employees' age discrimination action or pay any resulting judgment. See also: *Commercial Union Insurance Companies v. Sky, Inc.,* 810 F.Supp. 249, (W.D.Ark.1992) (Insurer had no duty to defend sexual harassment suit under "occurrence" based policy since the conduct was alleged by the former employee to be deliberate and intentional); *Old Republic Insurance Co. v. Comprehensive Health Care Associates, Inc.,* 786 F.Supp. 629, 632–33 (N.D.Tex.1992) (Insurer had no duty to defend sexual harassment suit under "occurrence" based policy which defined an "occurrence" as "an accident ... which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured".); *Vaughner v. Pulito,* 804 F.2d 873 (5th Cir. 1986) (Civil rights claims not covered by "occurrence" based policy.); and *Windmill Pointe Village Club Association, Inc. v. State Farm General Insurance Company,* 779 F.Supp. 596 (M.D.Fla.1991) ("Occurrence" based policy did not afford coverage for housing discrimination claim).

Kline alleges that his employment was terminated by Wall to Wall on the basis of his age. Termination of an employee's employment is obviously an intentional act. By no stretch of the imagination could it be considered an accidental or unintended consequence of one's conduct.

 Nor can Kline plausibly argue that the emotional distress or humiliation of having his employment terminated constitutes "bodily injury" within the meaning of the policy. The Pennsylvania courts have soundly rejected the contention that policy definitions of injury or bodily injury encompass mental or emotional harm. *Jackson v. Travelers Insurance Company,* 414 Pa.Super. 336, 606 A.2d 1384 (1992). In the context of insurance coverage, those terms were not intended to encompass harm other than physical injury. *Id.* See also: *Aim Insurance Company v. Culcasi,* 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 771–72 (1991) ("Bodily injury" as used in an insurance policy refers only to physical injuries and does not encompass emotional distress only with no physical harm). Nor can he plausibly argue that he

sustained "personal injury" which falls into one of the categories enumerated in the form quoted on page 128, *supra*.

■ Kline's complaint does not allege that he sustained any property damage as a result of the termination. Although he seeks back pay and alleges loss of employment opportunities, etc. as a result of the termination, such losses do not fall within the definition of property damage in the insurance context. Such harm is plainly not encompassed by the policy definition of property damage, which defines such damage as the injury to or destruction of tangible property.

■ Finally, the excess coverage policy issued by Kemper does not come into play until the primary coverage limit of $1 million dollars has been reached. Until liability exceeds that amount, American has no duty to defend or indemnify Wall to Wall under the excess policy. Here, obviously, no judgment has been entered in any amount and it is exceedingly difficult to conceive of such limits ever being reached given the nature of the claims asserted. Plaintiff is seeking back pay, front pay and other economic damages awardable under the ADEA and the PHRA. There is, in any event, no duty on the part of American to defend Wall to Wall, or to provide coverage in the underlying action under its excess policy at this stage.

Based on the foregoing, it is clear from the allegations of plaintiff's complaint and the plain language of the American/Kemper policies that plaintiff's age discrimination claims are not covered by either policy. American/Kemper has no obligation to defend Wall to Wall in the underlying action or pay any resulting judgment.

### *Federal/Chubb Policies*

■ Plaintiff's claims against Federal and Chubb fail for the same reason that he has no claim against American under its excess coverage policy. Aside from any other limitations, such as policy coverage,[10] it is clear that plaintiff has no claim against Federal or Chubb under their excess coverage policies. There is no possibility, even a re-

mote one, that plaintiff's claims will exceed the $5 million policy limits of American/Kemper's first level excess coverage.

In addition, under the language of the second level excess policy issued by Federal, there is no coverage, and no duty to defend, unless the excess coverage limits of the underlying insurance have been exhausted by payments of the limits of liability of such insurance, and then only in the event that the underlying carrier pays such a loss. See: Record Document No. 11, p. 3, quoting Federal policy.

Based on the foregoing, it is clear from the allegations of plaintiff's complaint and the plain language of the Federal/Chubb policies that plaintiff's age discrimination claims are not covered by either policy. Neither company has an obligation to defend the claims asserted against Wall to Wall in the underlying action or pay any resulting judgment.

\* \* \*

An order will be issued consistent with this memorandum.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The Rule 12(b)(6) motion filed by defendants American Manufacturers Mutual Insurance Company (American) and the Kemper Group (Kemper), (Record Document No. 8) is considered as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56. The motion is granted.

2. The Rule 12(b)(6) motion filed by defendants Federal Insurance Company (Federal) and the Chubb Group of Insurance Companies (Chubb), (Record Document No. 9) is considered as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56. The motion is granted.

3. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff Carl Kline and to close this case.

---

10. The "occurrence" based coverage of the American/Kemper primary policies discussed above is typical. We note without exploring the possibility that plaintiff has no claim under the Federal/Chubb excess coverage policies for the same coverage-restriction reasons.