THE PHILADELPHIA
CONTRIBUTIONSHIP INSURANCE
COMPANY

v.

William SHAPIRO, Appellant,

v.

Kenneth Shapiro, Welco Securities, Equipment Leasing Company of America, Walnut Equipment Leasing Company and William Shapiro, Esquire P.C., Illinois Insurance Exchange t/a Agora Syndicate, Inc., CNA Insurance Company t/a Continental Casualty Fund, Commercial Union Insurance Company.

Appeal of: Kenneth Shapiro, Welco Securities, Equipment Leasing Company of America, Walnut Equipment Leasing Company and William Shapiro, Esquire P.C.

Superior Court of Pennsylvania.

Argued April 3, 2002.

Filed May 8, 2002.

Nina B. Shapiro, Lancaster, for appellants.

Gaele M. Barthold, Philadelphia, for Commercial Union Insurance Company, appellee.

Before: McEWEN, P.J.E., STEVENS, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 William and Kenneth Shapiro, *et al.*, appeal from the March 14, 2001, Order disposing of all claims and parties.[1] We affirm.

---

1. Since appellee commenced this action in 1994, the lower court issued four rulings dismissing appellee and eventually all the defendants/appellees from the case. When the lower court dismissed the final party on March 14, 2001, appellants filed separate appeals

¶ 2 The instant litigation emerged in the wake of a 1994 John Doe lawsuit filed against appellants in federal district court, alleging intentional infliction of emotional distress and discrimination under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act ("PHRA"). In *Doe v. Shapiro*, 852 F.Supp. 1246, 1256, a former attorney with William Shapiro Esquire, P.C., alleged that the firm terminated his employment after learning that he had acquired immune deficiency syndrome ("AIDS"). The judge dismissed a portion of the lawsuit, and the parties settled all remaining claims.

¶ 3 Upon receiving this complaint, appellants requested indemnification and legal defense from several insurance companies with whom they had policies, including: appellee Philadelphia Contributionship Insurance Company ("Contributionship"), Commercial Union Insurance Company, Continental Casualty Company ("Continental"), and Illinois Insurance Exchange ("Angora"). Each of these providers refused, however, after independently determining that appellants' respective policies did not cover the discrimination-based lawsuit.

¶ 4 On July 27, 1994, appellee commenced the instant declaratory judgment action against appellant William Shapiro in the Montgomery County Court of Common Pleas. The Contributionship contended that the two insurance policies (homeowners and umbrella liability) it issued Shapiro did not obligate it to indemnify or defend him in a lawsuit of this kind. He filed an Answer and New Matter on November 2, 1994.

¶ 5 Two days later, Shapiro filed a "Complaint Against Additional Defendants," whereby he asserted claims against the remaining insurance companies, *supra*, for bad faith and "refus[ing] to provide defense and indemnity to its insureds." Appellant also brought the other defendants from *Doe v. Shapiro* into this case by naming them as additional defendants/appellants.

¶ 6 Before the trial court issued its March 14, 2001, Order disposing of all claims and parties, it issued three other orders dismissing Commercial Union, the Contributionship, and Angora from the case.

*July 15, 1996 Order* [2]:

¶ 7 On July 9, 1996, the court dismissed Commercial Union from the litigation as a sanction against appellants for failing to obey several previous orders to comply with discovery requests. Specifically, these orders required appellants to turn over documents regarding the underlying federal litigation and its insurance policy and to answer Commercial Union's interrogatories. When appellants finally responded, the information and answers they provided were inadequate and incomplete.

*March 12, 1997:*

¶ 8 After two years of discovery, appellee moved for summary judgment on October 24, 1996, arguing that John Doe's discrimination claims were not covered by either of appellant Shapiro's insurance policies. The lower court agreed and granted the motion for summary judgment on March 12, 1997, thereby dismissing the Contributionship from the case.

*June 10, 1998:*

from each of these four orders. On June 18, 2001, this Court quashed the first three of these appeals, *sua sponte*, because they were duplicative of the appeal from the March 14th final order. We stated that appellants could raise all of their issues regarding previous orders in the instant appeal.

**2.** This Order amended and modified the court's July 9, 1996 Order.

¶ 9 Angora similarly filed a motion for summary judgment on the grounds that appellants' policies were not broad enough to cover the facts of the underlying litigation. The court granted this motion on June 10, 1998, and dismissed Angora from the case.

*March 14, 2001:*

¶ 10 Over two years later, Continental also moved for summary judgment based on this same argument. On March 14, 2001, the lower court issued an order, which granted the motion and dismissed all claims against Continental.

¶ 11 As we previously mentioned, this March 14th Order constitutes a final order under Pa.R.A.P. 341 since Continental was the last insurance company remaining in the litigation. Instead of simply appealing from this final order, appellants appealed each individual order separately (Nos. 1186–1189 EDA 2001) and filed four 1925(b) Statements. The lower court addressed all of appellants' issues from these four orders together in its May 24, 2001, Opinion.

¶ 12 This Court then issued an order, *sua sponte,* quashing appellants' appeals from the first three orders, but stating that appellants were permitted to challenge these orders in this remaining appeal. Appellant now raises the following issues:

A. Absent the Court's finding of willfulness, or prejudice whether the Court's Order dated July 9, 1996 amended July 15, 1996 is an error of law and/or abuse of discretion by dismissal of Counts VII and VIII against additional defendant/appellee Commercial Union Insurance Company and issuance of sanctions against defendant/appellant William Shapiro.

B. Whether the Court's Order dated March 11, 1997 granting summary judgment to plaintiff/appellee Philadelphia Contributionship Insurance Company is an error of law and/or abuse of discretion in that material issues of fact exist relative to appellants', named insureds, entitlement to coverage for indemnification and/or costs of defense and that discovery was not complete or closed.

C. Whether the Court's Order dated June 8, 1998 granting summary judgment to additional defendant/appellee Illinois Insurance Exchange t/a Agora Syndicate, Inc. is an error of law and/or abuse of discretion in that material issues of fact exist relative to Appellants, named insureds, entitlement to coverage for indemnification and/or costs of defense and that discovery was not complete or closed.

D. Whether the Court's Order dated March 13, 2001 granting summary judgment to additional defendant/appellee CNA Insurance Company t/a Continental Casualty Company is an error of law and/or abuse of discretion in that material issues of fact exist relative to Appellants, named insureds, entitlement to coverage for indemnification and/or costs of defense.

Appellants' Brief at 4–5.

¶ 13 In addressing appellants' first contention, we note that "the decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the [trial] court." *Pioneer Commercial Funding Corp. v. Am. Fin. Mortgage Corp.,* 797 A.2d 269, 286 (2002). This Court will only disturb a discovery sanction where the lower court has abused that discretion. *Id.*

¶ 14 In deciding upon the proper sanction, the trial court must consider the following factors:

"(1) the nature and severity of the discovery violation;

(2) the defaulting party's willfulness or bad faith;

(3) prejudice to the opposing party;

(4) the ability to cure the prejudice; and

(5) the importance of the precluded evidence in light of the failure to comply."

*Id.* (citation omitted). The trial court can impose no more "severe sanction" than dismissing the lawsuit. *Croydon Plastics, Inc. v. Lower Bucks Cooling & Heating,* 698 A.2d 625, 629 (Pa.Super.1997). Therefore, dismissal is only appropriate where after "balanc[ing] the equities," the court concludes that "the violation [of the discovery rules] is willful and the opposing party has been prejudiced." *Estate of Ghaner v. Bindi,* 779 A.2d 585, 589 (Pa.Super.2001).

¶ 15 We recently considered this very question in *Ghaner,* where the trial court dismissed[3] plaintiff's wrongful death lawsuit after she failed to file a pre-trial statement in accordance with Pa.R.C.P. 212.2(c). *Id.* at 587–88. This Court ruled that this lone violation of the Pennsylvania Rules of Civil Procedure without something further could not be deemed "willful," "contemptuous," or "dilatory." *Id.* at 589. As a result, we held that dismissal was a harsh and inappropriate sanction. *Id.*

¶ 16 After thoroughly reviewing the instant facts and procedural history, we conclude that this case is distinguishable from *Ghaner.* Appellants did not simply violate a single rule of procedure. They engaged in a pattern of conduct over a sixteen-month period, which included: ignoring discovery requests and interrogatories, missing deadlines even where Commercial Union agreed to allow extensions, and disobeying court orders to comply. These discovery violations, set forth in detail below, were of a "nature and severity" that warranted dismissal.

¶ 17 On February 8, 1995, Commercial Union served appellants with discovery requests, which Pa.R.C.P. 4009.11 provides must be satisfied or objected to within thirty (30) days. Appellants did not meet this deadline by March 10, 1995, and despite repeated contacts from Commercial Union and an extension, they had still not complied after an additional four months.

¶ 18 Upon Commercial Union's motion, the lower court issued an order on September 19, 1995, compelling appellants to respond to these requests within twenty (20) days. Appellants violated this Order and when they had still not complied by October 17, 1995, Commercial Union asked the court to sanction appellants. After a hearing, the lower court issued an Order on November 17, 1995, giving appellants yet another opportunity to comply with these discovery requests. The Order provided that they needed to furnish "full and complete responses" by November 22, 1995. Order, 11/20/95.

¶ 19 Appellants responded on the last possible day, but what they furnished was an incomplete and inadequate answer to defendant/appellee's requests and interrogatories. Appellants were notified of their failures but did nothing to rectify the situation until June of the following year when they provided only one additional document.

¶ 20 Commercial Union again moved for sanctions. After reviewing appellants' responses, the lower court determined that they were "still in violation of [its] several Orders regarding compulsions to answer," and therefore it dismissed the claims against Commercial Union. Order, 7/11/96.

¶ 21 Violating the deadlines set forth in the Rules of Civil Procedure and two court

---

**3.** The trial court granted a motion in limine preventing plaintiff from introducing exhibits or testimony during trial and then granted the defendant's motion for summary judgment.

We held that together these two actions were "tantamount to a dismissal of this action." *Id.*

orders to comply indicate that appellants acted "willfully" and "dilatory" during this sixteen-month period. Beyond appellants' delay, we find it extremely important that the information they refused to disclose was the very information allegedly underlying their claims. The discovery requests and interrogatories dealt specifically with the *Doe v. Shapiro* litigation and with their insurance policies. These violations prejudiced Commercial Union's ability to defend against these claims.

¶ 22 Therefore, the lower court did not abuse its discretion in dismissing all of appellants' claims against Commercial Union as a sanction for their discovery violations. The court properly balanced the equities in light of the considerations set forth by this Court and imposed a "punishment which 'fit[ ] the crime.'" *Ghaner*, 779 A.2d at 590.

¶ 23 We now turn to appellants' remaining issues, which challenge the trial court's other three orders granting summary judgment and dismissing the Contributionship, Angora, and Continental. In a number of aspects, appellants' insurance policies with these companies are nearly identical, and we need not address each separately.

¶ 24 This Court will only overturn an order granting summary judgment where the trial court has "committed an error of law or abused its discretion." *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001). Summary judgment is proper where there is "no genuine issue of any material fact as to a necessary element of the cause of action." Pa.R.C.P. 1035.2(1); *Murphy*, 777 A.2d at 429. In reviewing such a grant, "[w]e must view the record in the light most favorable to the non-moving party, and [resolve] all doubts as to the existence of a genuine issue of material fact ... against the moving party." *Feidler v. Morris*

*Coupling Co.*, 784 A.2d 812, 814 (Pa.Super.2001) (citation omitted).

¶ 25 The proper interpretation of an insurance contract is a question of law, which requires this Court to "ascertain the intent of the parties as manifested by the language of the written agreement." *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 2002 WL 181716, at *4 (Pa.Super. February 6, 2002) (citation omitted). "Where [ ] the language of the contract is clear and unambiguous, [we must] give effect to that language." *Acceptance Ins. Co. v. Seybert*, 757 A.2d 380, 382 (Pa.Super.2000) (citations omitted). If, on the other hand, the language of a particular provision is ambiguous, that provision will be "construed in favor of the insured and against the insurer." *Id.* (citation omitted).

¶ 26 An insurer's obligation to defend does not arise every time an insured is sued, *Id.*, but only when the underlying lawsuit falls "within the coverage of the policy." *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994). Therefore, before we can decide whether the insurance policies at issue required the defendants/appellees to defend and indemnify appellants, it is necessary to first determine the scope of their coverage. *See id.*

¶ 27 The underlying *Doe v. Shapiro* litigation involved claims for intentional infliction of emotional distress, and discrimination under the ADA and PHRA. The express language of appellants' insurance policies with Contributionship, Angora, and Continental does not cover these claims or the damages John Doe sought for being terminated. William Shapiro's homeowner's policy with appellee stated that the insurance company would indemnify him for damages and defend him where "a claim is made or a suit is brought against [him] for damages because of *bodily injury or property dam-*

*age caused by an occurrence* to which this coverage applies." The Philadelphia Contributionship Ins. Co., Homeowner's Policy No. 086818, 3/26/92, at 10 (emphasis added).

¶ 28 The policy defines "bodily injury" as "bodily harm, sickness, or disease, including required care, loss of services and death that results." *Id.* at 1. The federal district court for the middle district of Pennsylvania accurately interpreted Pennsylvania law when it ruled that "the emotional distress or humiliation of having [one's] employment terminated [does not] constitute 'bodily injury.'" *Kline v. The Kemper Group,* 826 F.Supp. 123, 130 (M.D.Pa.1993) (citation omitted). The policy at issue in *Kline* defined "bodily injury" in the same terms as the Contributionship policy. *Id.*

¶ 29 The plaintiff in the John Doe litigation claimed that he suffered "compensatory and punitive damages ... including but not limited to damages for mental anguish and humiliation." Complaint, *Doe v. Shapiro,* E.D. Pa. Civil Action No. 94–0925, at 6. He made no allegation that he suffered any "bodily harm" as a result of being fired. Instead, the damages he claimed were all emotional damages and are not covered by the policy.

¶ 30 Similarly, none of John Doe's claims qualify as "property damage" under the policy. He also sought damages for front pay, back pay, and benefits he lost as a result of his termination. *Id.* The policy defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property." The Philadelphia Contributionship Ins. Co., Homeowner's Policy No. 086818, at 1. Back pay, front pay and benefits do not constitute "tangible assets" under the policy, and therefore any damage or loss thereto is not "property damage." *See Kline,* 826 F.Supp. at 130.

¶ 31 Even if we were to find that this underlying lawsuit involved claims for "bodily injury" or "property damage," we would still rule that appellee had no duty to defend or indemnify appellant. Such damage must be caused by an "occurrence to which the coverage applies," and here it was not.

¶ 32 The policy defines "occurrence" as an "accident, including exposure to conditions, which results, during the policy period, in: a.) bodily injury; or b.) property damage." The Philadelphia Contributionship Ins. Co., Homeowner's Policy No. 086818, at 1. Pennsylvania courts have held that an intentional act, such as assault, can never be deemed an "accident," including for purposes of an insurance policy. *Gene's Rest. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246, 247 (1988); *Sclabassi v. Nationwide Mutual Fire Ins. Co.,* 789 A.2d 699, 703 (Pa.Super.2001). Similarly, we agree with the trial court's conclusion that appellant's intentional act of terminating John Doe's employment does not qualify as an "accident" and, therefore, is not an "occurrence" under the policy.

¶ 33 Our analysis of this policy issued by appellee is equally applicable to appellants' claims regarding the other companies' policies. The Angora and Continental policies contain nearly identical provisions and definitions of "bodily injury," "property damage," and "occurrence." With respect to these issues, we reject appellants' arguments.

¶ 34 As the trial court also discussed, the Contributionship homeowner's policy contains an exclusion to personal liability when the injury arises out of the "business pursuits of an insured." The Philadelphia Contributionship Ins. Co., Homeowner's Policy No. 086818, at 11. Clearly, appellant's decision to fire John Doe was a "business" decision and did not come within the policy.

¶ 35 Appellant further contends that his personal umbrella liability policy required

appellee to defend and indemnify him. This policy, however, also contains an exclusion for "occurrences arising out of a business." The Philadelphia Contributionship Ins. Co., Personal Umbrella Liability Policy No. PE439, at 3. Therefore, this argument is similarly meritless.

¶ 36 In addition to bodily injury and property damage, the insurance contract Continental issued also covered appellants for "personal injury." Specifically, the policy defined "personal injury" as "libel, slander, false arrest, wrongful detention, wrongful entry, malicious prosecution, invasion of privacy or defamation of character." The plaintiff in *Doe v. Shapiro* makes no averment that he sustained any such "personal injury." The Court's grant of summary judgment was correct.

¶ 37 Order affirmed.

¶ 38 McEWEN, P.J.E., Concurs in the Result.