2024 PA Super 198

| | | |
|---|---|---|
| HOSS LAND COMPANY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMON G. THORSON | : | |
| | : | |
| Appellant | : | No. 1551 MDA 2023 |

Appeal from the Order Entered October 11, 2023
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2020-03431

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.*

OPINION BY BECK, J.:                                   **FILED: SEPTEMBER 5, 2024**

Ramon G. Thorson ("Thorson") appeals from the order entered by the Franklin County Court of Common Pleas ("trial court") granting the motion for sanctions filed by Hoss Land Company ("HLC") in this quiet title action. Thorson challenges the trial court's decision to sanction him by entering default judgment in favor of HLC and ordering that the mortgage Thorson held against the property at issue in this case is satisfied.  We affirm.

On October 6, 2015, Thorson conveyed a parcel of property at 200 Cleveland Avenue and 174/178 Hamilton Avenue located in Waynesboro, Franklin County, Pennsylvania (hereinafter "the property") to Gregory L. Eckenrode, Sr. ("Eckenrode") for $34,980.00.  In connection with the sale of the property, Eckenrode executed a mortgage in favor of Thorson for the full

_____

* Retired Senior Judge assigned to the Superior Court.

purchase price of the property. The property consists of several rental units each of which are occupied by tenants.

On March 18, 2020, HLC acquired the property from Eckenrode by deed and assumed responsibility for the payment of the mortgage. After acquiring the property, HLC contacted Thorson seeking to arrange a payoff of the mortgage so that HLC would own the property free and clear of any liens. HLC believed the payoff amount would be the unpaid balance of the principal ($34,980.00) plus costs and interest. In response, on October 12, 2020, Thorson, informed HLC of his intention to foreclose on the property, stating that the mortgage was in default because of Eckenrode's failure to make payments from October 2015 through September 2020, and that the actual payoff amount for the mortgage was $739,699.15.

On November 17, 2020, HLC filed a complaint against Thorson to quiet title to the property. *See generally* Complaint, 11/17/2020. HLC alleged that although Eckenrode owned the property, Thorson was collecting rent from the tenants who resided at the property, and that Thorson was not accounting for rent payments from tenants when calculating the amount due on the mortgage. *Id.* ¶¶ 13-14. HLC thus requested that the trial court determine the appropriate amount due under the mortgage. *See id.* On December 28, 2020, Thorson filed an answer with new matter and counterclaims, including default on the mortgage and unjust enrichment. *See generally* Answer, 12/28/2020. Thorson averred that the payoff on the mortgage was now

- 2 -

$492,199.97.[1] *Id.* ¶ 24-27. Thorson asserted that this amount was the sum of the original principal balance of the mortgage, plus advances Thorson made to Eckenrode under the mortgage note and improvements Thorson made to the property after Eckenrode purchased it. *Id.*

On July 21, 2021, HLC filed a motion to compel discovery. *See generally* Motion to Compel Discovery, 7/21/2021. HLC alleged that on May 6, 2021, it served on Thorson a request for production of documents relating to, inter alia, leases for the property's tenants, rent payments from the tenants, Thorson's tax returns from 2015 through 2020 for an accounting of how those rent payments were applied to the balance of the mortgage, advances Thorson made under the mortgage note, and invoices and receipts of the improvements he allegedly made to the property. *Id.* ¶ 3, Exhibit A. HLC further alleged that it made repeated attempts to obtain these documents from Thorson to no avail. *Id.* ¶¶ 3-9. On August 17, 2021, the trial court granted HLC's motion and ordered Thorson to respond to HLC's discovery requests within twenty days. Trial Court Order, 8/17/2021.

On September 22, 2021, HLC filed a motion for sanctions in which it claimed that Thorson had only partially complied with its discovery requests, providing tax returns for 2018 and 2019 and two leases from tenants. Motion

---

[1] It is unclear from the record why Thorson claimed in his Answer that the payoff for the mortgage was $492,199.97 when he originally informed HLC the payoff amount was $739,699.15.

for Sanctions, 9/22/2021, ¶ 15. HLC also claimed that Thorson did not provide any documentation relating to rent payments made by tenants, the advances he claims to have made under the mortgage note, or the improvements he claims to have made to the property. *Id.* On December 29, 2021, the trial court granted HLC's motion for sanctions, awarding HLC attorney's fees and precluding Thorson from introducing evidence of the advances he allegedly paid under the mortgage or evidence of rent payments lower than the full amount provided for in the leases he produced. Trial Court Order, 12/29/2021. On March 21, 2022, Thorson obtained new counsel. On December 12, 2022, HLC filed a second request for production of documents, seeking the remaining documents.

On August 9, 2023, HLC filed another motion for sanctions. *See generally* Motion for Sanctions, 8/9/2023. HLC claimed that despite repeated assurances from Thorson's new counsel in the intervening months that counsel had Thorson's tax returns and would be sending them to HLC immediately, HLC had yet to receive the tax returns and its other outstanding document requests as of the filing of their second motion for sanctions. *Id.* ¶¶ 20-30. On October 11, 2023, the trial court granted HLC's second motion for sanctions. *See generally* Trial Court Order, 10/11/2023. The trial court granted HLC's motion, entering default judgment in favor of HLC in the quiet title action and a judgment of non-pros as to Thorson's counterclaims against

HLC. ***Id.*** at 4-5. The trial court further ruled that the mortgage Thorson held against the property was satisfied and awarded HLC attorney's fees. ***Id.***

Thorson timely appealed to this Court. Both the trial court and Thorson have complied with Pennsylvania Rule of Appellate Procedure 1925. Thorson presents the following issues for review:

1. Did the trial court commit an error of law when it granted HLC's motion for sanctions and entered a judgment of non-pros against Thorson?

2. Did the trial court commit an error of law when it ordered that the mortgage lien that Thorson held on the property that is the subject of this action should be satisfied?

Thorson's Brief at 7 (unnecessary capitalization omitted).

First, Thorson argues that the trial court erred in granting default judgment in favor of HLC as a discovery sanction.[2] ***Id.*** at 10-13. Specifically, Thorson contends that default judgment was inappropriate because he provided HLC with an accounting of all rents received from the property for

_____

[2] We note that in his appellate brief, Thorson repeatedly states that the trial court erred in "entering a judgment of non-pros." ***See, e.g.,*** Thorson's Brief at 10. In his Rule 1925(b) statement, however, Thorson raised the claim that the trial court erred in entering a default judgment in favor of HLC, but did not preserve a claim that the trial court erred in ordering a judgment of non-pros as to his counterclaims against HLC. ***See*** Rule 1925(b) Statement, 11/27/2023. Further, despite Thorson's repeated usage of the phrase "judgment of non-pros" in his brief, the case law he cites and the arguments he makes relate to the trial court's decision to enter default judgment in favor of HLC. Accordingly, we will address Thorson's first issue as a challenge to the trial court's entry of default judgment, as that was the issue Thorson raised in his Rule 1925(b) statement and the issue he substantively argues in his brief. We will treat his use of the phrase "judgment of non-pros" as a typographical error.

the relevant period and all the tax returns HLC requested prior to the hearing on HLC's second motion for sanctions. *Id.* at 11-12. Thorson also claims that at the hearing on HLC's second motion for sanctions, he "affirmed to the [t]rial [c]ourt that he was not collecting rent from the tenants at the [p]roperty because of the pendency of this action and that he has continued to incur expenses associated with the [p]roperty[.]" *Id.* at 12-13.

Pennsylvania Rule of Civil Procedure 4019 authorizes a trial court to enter default judgment against a defendant who fails to comply with the court's discovery orders. Pa.R.Civ.P. 4019(c)(3). "A default judgment entered pursuant to [Rule] 4019(c)(3) is comparable to a judgment entered after hearing." *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 142 (Pa. Super. 2010) (citation omitted).

Appellate review of a trial court's entry of default judgment as a discovery sanction is "stringent." *Id.* at 141–42; *see also Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. 1997) (recognizing that "heightened review" is appropriate where a trial court issues an order dismissing the case of a sanctioned party). "Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed." *Rohm & Haas Co.*, 992 A.2d at 142. The trial court's discretion, however, is not unfettered; as "dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the

equities carefully and dismiss only where **the violation of the discovery rules is willful** and the opposing party has been prejudiced." *Id.* (citation omitted, emphasis in original). Thus, where a discovery sanction terminates an action, the trial court "must consider multiple factors balanced against the necessity of the sanction." *Id.*

Our Supreme Court has held that the trial court should examine the following four factors before determining the severity of discovery sanctions:

> (1) the prejudice, if any, endured by the non-offending party and the ability of the opposing party to cure any prejudice; (2) the noncomplying party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence in light of the failure to provide the discovery; and (4) the number of discovery violations by the offending party.

*City of Phila. v. Fraternal Ord. of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1270 (Pa. 2009). In applying these factors to appeals where a trial court has dismissed an action for non-compliance with a discovery order, appellate courts "have consistently placed greater emphasis on the first two factors: (1) the prejudice to the non-offending party and the ability to cure that prejudice; and (2) the willfulness of the offending party's conduct." *Id.* at 1271.

We begin by addressing the first and third factors together, as we find the prejudice that HLC endured directly related to the importance of the evidence excluded because of Thorson's failure to provide the documents HLC requested. Our Court has explained that "[p]rejudice for purposes of discovery violation is said to result any time there is a substantial diminution

of a party's ability to properly present its case." ***Stewart v. Rossi***, 681 A.2d 214, 218-19 (Pa. Super. 1996) (quotation marks and citation omitted). In this case, the trial court found a substantial diminution of HLC's ability to present its case. Trial Court Opinion, 12/27/2023, at 7-8. We agree.

The record reflects that HLC acquired the property at issue, aware of the mortgage Thorson held against the property, and that HLC contacted Thorson so that it could pay off the mortgage and own the property free and clear of any encumbrances. ***See*** Complaint, 11/17/2020, ¶¶ 7-9. Thorson, however, informed HLC that the payoff amount of the mortgage was roughly $700,000.00 more than the original principal amount of the mortgage. ***See id.*** ¶¶ 9-10. The discovery requests HLC made (e.g., Thorson's tax returns, an accounting of the rent payment tenants made to Thorson and how he applied those to the mortgage balance, invoices and receipts related to improvements Thorson made to the property) would have been critical in assisting HLC in determining and understanding the amount it owed on the mortgage. Indeed, it is difficult to conceive any alternative means HLC could have utilized to determine the mortgage payoff beyond the precise documents it sought in its discovery requests, and thus make its case that the mortgage payoff was not the substantially higher number Thorson asserted.

Thorson failed to turn over these documents to HLC for over two years, which delayed HLC's ability to own the property free and clear of any liens for over three years and caused HLC to take on additional costs of litigation. Thus,

the prejudice to HLC is clear, and the record supports the trial court's determination that Thorson's failure to comply with discovery requests and court orders caused a substantial diminution of HLC's ability to present its case. *See Phila. Contributionship Ins. Co. v. Shapiro*, 798 A.2d 781, 786 (Pa. Super. 2002) (concluding that appellee was prejudiced where the information appellant refused to disclose was the information underlying the claims at issue); *Stewart*, 681 A.2d at 218-19.

Thorson claims that he has cured any prejudice to HLC because he provided HLC with an accounting of the rent he collected from the property and all the tax returns it had requested a few days before the hearing on HLC's second motion for sanctions. Thorson's Brief at 11-13. The record, however, contains no evidence that Thorson provided these documents to HLC. Tellingly, at no point in his appellate brief does Thorson cite to the record in support of these claims.[3] *See id.* Thorson appended to his appellate brief emails that his counsel sent to HLC that contained his tax returns as attachments. *See* Thorson's Brief, Exhibit A-2. These emails are not a part of the certified record on appeal and thus are not evidence we may consider

---

[3] HLC admits that it did receive Thorson's rent ledgers for the property. HLC's Brief at 27 n.6. HLC, however, did not merely request rent ledgers, it requested an accounting, through Thorson's tax returns, of how the rent Thorson had collected was applied towards the mortgage he held on the property. *See id.; see also* Motion to Compel Discovery, 7/21/2021, ¶ 3, Exhibit A. The record contains no evidence that HLC ever received the tax returns or any form of an accounting.

on appeal. **See MacPherson v. Magee Mem'l Hosp. for Convalescence**, 128 A.3d 1209, 1224 (Pa. Super. 2015) (stating that the "law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal"); **Ruspi v. Glatz**, 69 A.3d 680, 691 (Pa. Super. 2013) ("for purposes of appellate review, what is not in the certified record does not exist"). Moreover, these emails themselves are not the tax returns, but rather emails that purport to show a link to the tax returns as an attachment. **See** Thorson's Brief, Exhibit A-2. Thus, we find unavailing Thorson's claim that he had cured any prejudice to HLC by providing some of the requested documents.

Turning to the second factor and fourth factors, the trial court found Thorson's repeated failure to adequately respond to discovery requests over a two-year period to be a severe discovery violation and that his non-compliance was willful. Trial Court Opinion, 12/27/2023, at 5-7. Again, we agree.

The record reflects that Thorson failed to meaningfully respond to HLC's discovery requests over a two-year period. Additionally, the record reflects that Thorson failed to comply with two court orders—the trial court's August 17, 2021 order granting HLC's motion to compel discovery and the trial court's December 29, 2021 granting HLC's first motion for sanctions. In addition to the two court orders, Thorson received repeated requests and reminders from HLC over the two-year period that he had yet to fully comply with its discovery requests and/or the trial court's orders. **See, e.g.**, Motion for Sanctions,

8/9/2023, Exhibits 8-14; Motion to Compel Discovery, 7/21/2021, Exhibits B-D. Finally, in its second motion for sanctions, HLC alleged that Thorson willfully failed to comply with the Pennsylvania Rules of Civil Procedure, that Thorson had repeatedly mispresented that he would soon provide HLC with his tax returns, and that he had blatantly ignored court orders sanctioning him for failing to comply with his discovery obligations. Motion for Sanctions, 8/9/2023, ¶ 41. In his response to HLC's second motion for sanctions, Thorson explicitly admitted these allegations. Reply to Second Motion for Sanctions, 8/25/2023, ¶ 41. Thus, there can be no dispute that Thorson's non-compliance was willful. *See Shapiro*, 798 A.2d at 785-86 (stating that violating two court orders to comply with discovery obligations established appellants acted "willfully" and "dilatory" during a sixteen-month period).

Based on the foregoing, we find no error of law or abuse of discretion in the trial court's decision to enter default judgment in favor of HLC as a sanction for Thorson's repeated and willful violation of HLC's discovery requests and the trial court's discovery orders. Thus, Thorson's first claim fails.

Second, Thorson argues that the trial court erred in ordering that the mortgage he held against the property was satisfied as a discovery sanction. Thorson's Brief at 13-15. Thorson asserts that the trial court's decision was inappropriate because it did not hold an evidentiary hearing to determine the balance of the mortgage obligation and nor did it make a factual finding as to whether the mortgage had been paid in full. *Id.* at 14. Thorson asserts that

under Pennsylvania law, a mortgage cannot be satisfied until the obligation has been paid in full. *Id.* at 15.

In support of his claim, Thorson cites section 4 of the Pennsylvania Mortgage Satisfaction Act ("PMSA"), which states that "[e]very mortgagee shall, upon receipt of payment of the entire mortgage obligation …, present for recording in the office where the mortgage is recorded a duly executed satisfaction piece ….  The satisfaction piece when recorded shall forever thereafter discharge, defeat and release the lien and debt of the mortgage." 21 P.S. § 721-4.[4]  While section 4 describes the procedure a mortgagee must follow once a mortgagor has satisfied the mortgage obligation to effectuate the discharge of the mortgage obligation, it does not in any manner set forth a comprehensive list of the ways in which a mortgage may be satisfied. *See id.*  Indeed, the PMSA specifically contemplates several different manners in which a mortgage can be satisfied, including by court order:

> This act shall not affect or impair any other act, or any rule of civil procedure promulgated by the Pennsylvania Supreme Court, which provides for the satisfaction or discharge of a mortgage **by order or decree of any court** upon payment of the applicable fee.  The recording officer shall accept for recording a copy of the order or decree certified by the prothonotary and shall index and indicate the same in the record as is provided in this act for a satisfaction piece.

21 P.S. § 721-9 (emphasis added).

---

[4]  Act of Dec. 9, 2002, P.L. 1530, No. 197, § 4.

Moreover, the Pennsylvania Rules of Civil Procedure provide that in a quiet title action, upon the grant of relief to the plaintiff, the trial court:

(1) shall order that the defendant be forever barred from asserting any right, lien, title or interest in the land inconsistent with the interest or claim of the plaintiff set forth in the complaint, unless the defendant takes such action as the order directs within thirty days thereafter. If such action is not taken within the thirty-day period, the prothonotary on praecipe of the plaintiff shall enter final judgment.

(2) shall enter a final judgment that a document, obligation or deed affecting a right, lien, title or interest in the land is cancelled or is valid, invalid or discharged or that a copy of a lost plan, document, obligation or deed is an authentic copy;

(3) shall enter a final judgment ordering the defendant, the prothonotary, or the recorder of deeds to file, record, cancel, surrender or satisfy of record, as the case may be, any plan, document, obligation or deed determined to be valid, invalid, satisfied or discharged, and to execute and deliver any document, obligation or deed necessary to make the order effective; or

(4) shall enter any other order necessary for the granting of proper relief.

Pa.R.Civ.P. 1066(b).

Thus, pursuant to Rule 1066(b), where a trial court grants default judgment in favor of the plaintiff, it necessarily follows that the defendant can no longer assert any right or obligation, including a mortgage, inconsistent with the interest of the plaintiff. Pa.R.Civ.P. 1066(b)(1). Indeed, the trial court is required to order the cancellation or discharge of any lien affecting the interest in the land, removing any ownership interest the defendant may have had in the property. Pa.R.Civ.P. 1066(b)(2), (3).

Because the trial court entered default judgment in the quiet title action in favor of HLC (the plaintiff in this case), Thorson (the defendant) could no longer assert any right or obligation, including a mortgage, inconsistent with HLC's interest of the property. **See** Pa.R.Civ.P. 1066(b)(1). Further, trial court is required to enter a judgment ordering the discharge of the mortgage Thorson held against the property and removing any claim of ownership Thorson may have had. Pa.R.Civ.P. 1066(b)(2), (3). Accordingly, we conclude that the trial court did not abuse its discretion in ordering the discharge of the mortgage and awarding HLC title to the property free and clear of any liens or encumbrances as a sanction for the Thorson's willful discovery violations.[5]

Order affirmed. Motion to quash or dismiss denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2024

---

[5] This renders moot HLC's motion to quash or dismiss the appeal.

- 14 -